[Civ. No. 2447. Fourth Appellate District.—September 27, 1939.]

HAYWARD LUMBER & INVESTMENT COMPANY (a Corporation), Respondent, v. ORONDO MINES (a Corporation) et al., Defendants; H. K. POLLOCK et al., Appellants.

Russ Avery for Appellants.

Philip T. Lyons for Respondent.

GRIFFIN, J.—This action was instituted by respondent to enforce a lien for materials furnished on a group of mining claims in Inyo County. Respondent obtained judgment and the appellant owners have appealed.

On March 7, 1933, the defendants and appellants Alice H. McIntosh and H. K. Pollock, as owners and lessors, entered into an agreement with Horace H. Howard, as lessee, granting him a lease (with an option to buy) on certain mining claims situated in Inyo County. This lease was subsequently assigned to Gold Blossom Mining Co., which later changed its corporate name to Blue Bonnet Mining Co., and that company assigned the lease to Ivan Lewis Finkelberg. The owners posted notice of nonresponsibility on the prop-

erty March 7, 1933, and recorded it June 24, 1933. It was *acknowledged* before a notary public instead of being verified, and its admission in evidence was refused. On March 1, 1934, the defendants and appellants, Alice H. McIntosh and H. K. Pollock entered into an agreement, as owners and lessors, with Ivan Lewis Finkelberg, as lessee, concerning the same group of mining claims. It recited the previous lease to Howard, the assignment thereof to Gold Blossom Mining Co., and the assignment by that company to Finkelberg. It extended the so-called ''construction period'' 90 days from March 1, 1934. The agreement was signed and acknowledged by Mrs. McIntosh in San Bernardino March 2, 1934; by H. K. Pollock in Orange County, March 5, 1934; by Ivan L. Finkelberg in San Bernardino County on March 5, 1934, and was filed for record in the office of the county recorder of Inyo County March 12, 1934. Finkelberg assigned this lease to the Orondo Mines, a corporation (apparently without the knowledge of the appellants), by an instrument dated April 7, 1934, and acknowledged by him April 9, 1934. Mrs. McIntosh prepared a notice of non-responsibility on her own typewriter, signed it, made some copies of it, dated it *March 1, 1934,* took them with her to the mine, and posted them in three conspicuous places on the mine on *April 2, 1934.* On April 9, 1934, she mailed the verified copy to the county recorder of Inyo County, which was filed for record in that office April 10, 1934.

The principal defense to the enforcement of the lien for materials furnished by respondent on this mining property was that the notice of nonresponsibility was sufficient in form and substance and was posted and recorded in due time and in proper manner and constituted a bar to the enforcement of respondent's lien. The trial court held otherwise and gave judgment for the whole amount claimed by respondent and denied a motion for new trial.

The issue presented bears on the question of the posting and recording of the notice of nonresponsibility under section 1192 of the Code of Civil Procedure, that is, was the notice posted on April 2, 1934, and recorded on April 10, 1934, within ten days after the owner *obtained knowledge of the construction?* If the notice of nonresponsibility was posted and recorded in proper time, it is a bar to the enforcement of the lien on appellants' property. Otherwise, such notice

was not effective for any purpose. (*Dixon* v. *Fredericks*, 129 Cal. App. 703, 706 [19 Pac. (2d) 272].) Knowledge of *intended construction* alone is not sufficient to constitute knowledge of *actual construction*. (*Whiting-Mead Commercial Co.* v. *Brown*, 44 Cal. App. 371, 374 [186 Pac. 386]; *Hayward Lumber Co.* v. *Ross*, 32 Cal. App. (2d) 455 [90 Pac. (2d) 135].)

The evidence discloses that Alice McIntosh knew, as early as February 6, 1934, that some work was being done on the property by the lessees then in possession. Her testimony is as follows:

"I heard my husband testify here that he went to work for Mr. Finkelberg on February 6, 1934. I knew at the time that he went to work and knew they were doing some kind of work. I did not know what kind of work they were doing, just that they were doing some work. I did not know by what right of title or on what theory Mr. Finkelberg was in possession of the property on February 6, 1934, and did not make any inquiry. I just let the operations proceed. I do not now remember whether I had an idea at that time that he was proceeding by virtue of an assignment from the Blue Bonnet Company to him. I did not think that he was a trespasser. He was a stockholder in the Blue Bonnet Company. My husband did not tell me from time to time about work that was being done, nor did he tell me specially that any work was being done; in a general way I knew that some kind of work was being done."

On March 1, 1934, she prepared, on her own typewriter, the notice of nonresponsibility relied upon. In it she recited the fact that work was being done on the property. It provided:

"To Whom it May Concern:

"Notice is hereby given . . .

"That:— Ivan Lewis Finkelberg, is in possession of, *and working said mining claims* (italics ours) under a lease and agreement of sale; and that the said owners . . . give notice to all whom it may concern that they will not be responsible, and that the said mining claims or property, will not be responsible or liable for any debts whatsoever incurred by said Ivan Lewis Finkelberg, his successors or assigns, for any work or labor performed upon said mining claims, or either

of them, or for any material, supplies or machinery furnished or placed upon said mining claims or either of them; . . . "

The notice of nonresponsibility was not posted until 30 days, and was not recorded until more than 40 days after its preparation. In order to have knowledge of actual improvements being made on appellants' property, it would not be necessary that they actually see the work in progress. It is true that appellants had knowledge of the intended construction on the property. Mrs. McIntosh executed, as owner, each of the various leases on the properties, which not only authorized, but required, under the last lease, certain work by the lessee to be done within 90 days (referred to as the "construction period") from March 1, 1934.

J. E. McIntosh, the husband of Alice H. McIntosh, went to work on the mine about February 6, 1934, and his work consisted in raising the shaft, laying pipe lines, and fixing the roads. He claims that he was employed by Finkelberg, the same as other employees, and that at no time was he agent for his wife to receive or give notice of the construction work.

Appellants claim that whatever knowledge the husband may have had of the construction work was not notice to the wife, citing *McCray* v. *Wotkyns*, 41 Cal. App. 449, 451 [182 Pac. 972]. Appellants also claim that they had no knowledge of the *actual construction* until April 1, 1934, when Mrs. McIntosh went from her home in Arcadia to the mine and started to live there, and that on the following day, April 2, 1934, she posted the required notice and at that time there was no new lumber or materials visible on the ground. She further stated that Finkelberg was in actual possession before the agreement of March 1, 1934, was signed and that she did not have any actual notice herself of any assignment by Finkelberg to Orondo Mines, a corporation, on April 7, 1934, and that she never consented to the assignment of the lease by him.

The Orondo Mines was evidently formed by Finkelberg as a corporate agency to take over his mining lease and operate the property. He continued to exercise active management over it. Upon this evidence and under the circumstances related, the trial court has found that the appellants had obtained *actual knowledge* of the construction more

than ten days prior to April 2, 1934, and therefore the notice was not effective.

The evidence shows, as indicated by a delivery slip signed by a Mr. Ernst, manager of the defendant mines corporation and of Dr. Finkelberg, the testimony of witnesses, and as found by the trial court, that a delivery of materials, consisting of 20 sacks of cement, was made by respondent company to the mining property on March 14, 1934. The trial court further found that "on or prior to March 14th, 1934, the defendant The Orondo Mines, a corporation, being then in possession of said premises, as lessee, did, with the knowledge of all of the defendants having any proprietary interest in said premises, enter upon the making of certain improvements upon the premises hereinabove described and thereupon proceeded continuously therewith (without cessation of labor thereon) until the substantial completion thereof on or about November 1st, 1936", and "that on or prior to March 14th, 1934, plaintiff contracted with the defendant The Orondo Mines, a corporation, to furnish building materials required by it for use in the said work and improvement, and for which the said defendant The Orondo Mines, a corporation, agreed to pay", and "between March 14th, 1934, and October 16th, 1936, plaintiff did so furnish the said materials consisting of lumber, sash, doors, hardware and roofing of the current market price and reasonable value of six thousand seventy-five and 89/100 dollars ($6,075.89) against which is credited ninety and 81/100 dollars ($90.81) as the sale price of certain of said materials which were returned to plaintiff unused, leaving a balance of five thousand nine hundred eighty-five and 08/100 dollars ($5,985.08); that all of said materials were actually used in making said improvements; that at the time of the filing of the claim of lien hereinafter referred to, no part of said sum had been paid except the sum of three thousand six hundred twenty-four and 05/100 dollars ($3,624.05), leaving a balance of two thousand three hundred sixty-one and 03/100 dollars ($2,361.-03) justly due and owing plaintiff on account thereof after deducting all just credits and off-sets; that no part thereof has since been paid except the sum of one hundred thirty-nine and 28/100 dollars ($139.28) on December 18th, 1936, leaving a balance of two thousand two hundred twenty-one

and 75/100 dollars ($2,221.75) still due and owing plaintiff on account thereof''.

Appellants having provided in a lease, for extensive work to be done on their property by the lessee, the fact that Mrs. McIntosh's husband was employed by the lessee, and was doing some work on the property would immediately suggest to a prudent person that the work being done was the same work agreed upon in the lease. Appellant Mrs. McIntosh was charged with such knowledge as would have been disclosed to her by reasonable inquiry into the circumstances which were actually brought to her attention by the terms of the various leases of the property. (Sec. 19, Civ. Code; *Harmon Lumber Co.* v. *Brown,* 165 Cal. 193, 197 [131 Pac. 368].)

The evidence is uncontradicted to the effect that appellant Mrs. McIntosh knew, as early as February 6, 1934, that some work was being done on the property by her lessees. In the contract dated March 1, 1934, she recited the fact that work was being done on the property. When the husband of appellant told her, on or about February 6, 1934, that he was working at the mine and that certain work was being done at that time, they were both talking about actual and not intended work. The rule is well stated in *Harmon Lumber Co.* v. *Brown, supra,* that: ''The knowledge which will subject the owner to this burden is not alone actual knowledge. Constructive knowledge, i. e., notice of circumstances which would put a prudent man upon inquiry as to the fact in question (Civ. Code, sec. 19), is equally potent to bind the owner.'' (Citing *Santa Monica L. & M. Co.* v. *Hege,* 119 Cal. 376 [51 Pac. 555]; *Evans* v. *Judson,* 120 Cal. 282 [52 Pac. 585]; *Hines* v. *Miller,* 122 Cal. 517 [55 Pac. 401].)

In each of the cases just cited the owner was, upon facts very similar to those appearing here, held to have had constructive notice of the contemplated improvements. These circumstances certainly required appellant, as a prudent person, to prosecute inquiry to ascertain whether her lessee was complying with his obligation to promptly construct improvements which were to inure to the benefit of the lessor. In view of the circumstances related, we are unable to disturb the finding of the trial court that appellants had *obtained knowledge of such construction,* work or labor, on or prior

to March 14, 1934. It must follow, therefore, that the notice posted April 2, 1934, was ineffective as to respondent's lien. (Sec. 1192, Code Civ. Proc.)

Appellant complains that the evidence does not support the finding of the trial court that materials of the reasonable value claimed in the complaint *were delivered on the property* and *used in the construction work on the property*. The documentary evidence on this subject consists of respondent's exhibits numbers 6, 7, and 8. Exhibit number 6 is an original ticket for the sale and delivery of 20 sacks of cement dated March 14, 1934, and which was identified by the witness Nuckolls as indicating that the material was loaded by Mr. Tea, an employee of the plaintiff company. The receipt for the materials enumerated in that ticket was signed by Ray Ernst and Dick Robinson, both of whose signatures appear on the ticket. The signature of Mr. Ernst was identified by the witness Nuckolls, as follows: ''I saw him sign his name on one occasion, I feel in my mind that this is his signature. I am able to identify it. He came in and placed an order to be charged this way and signed it before the order was filled. In this particular case the driver also signed; it was signed in our office.'' Exhibit No. 7 consisted of a group of fifty-one original delivery tickets which were introduced and received in evidence without objection. Exhibit No. 8 consisted of a group of 66 original delivery tickets for various materials. This particular group of tickets was received in evidence over the objection of appellants. These tickets were variously signed as loaded by Mr. Tea and other employees of the plaintiff company and were receipted for by several persons, all of whom were employees of defendant Orondo Mines. These various signatures were identified by the witness Shinbane. F. T. Taylor, a witness called on behalf of respondent, concerning the delivery of the materials enumerated in respondent's exhibit No. 7, testified: ''All material on the tickets bearing my signature was picked up at San Bernardino yards and I delivered them to the Orondo Mines. Referring to the mine property during the time that I was up there, I helped unload various materials at the shaft and at the cookhouse. They were actually used on construction work to the best of my knowledge.'' He further testified: ''Q. By Mr. Lyons: Mr. Taylor, these other materials that you have testified about

as being delivered by Mr. Smith, Mr. Simmons and Mr. Fuller, did you see these materials delivered on the job? A. Yes, I helped unload it. When not working on the truck I helped unload. . . . Q. Was that true also of that delivered by Mr. Coleman? A. Quite a bit of Mr. Coleman's.''

Mr. Shinbane, an officer of defendant Orondo Mines, testified with respect to the use of the materials on the property in question as follows: ''During the time that I was connected with the Orondo Mines I was present from time to time on the mining properties in Inyo County. I checked materials at the time we purchased them. I did not check them as they were unloaded. Such materials as we ordered or purchased from Hayward Lumber & Investment Company were used in the mining operations on those properties that were called The Orondo Mines. They were used for timbering underground; they were used for putting up a cookhouse and dining room and for various other items that are used in mine operations.''

The evidence was to the effect that there was a definite agreement between the respondent company and The Orondo Mines, that all payments made on the account would be applied first, on the old items of the account. The items about which the appellants complain that there is no competent proof of delivery to and use in the property, were practically all of the earlier deliveries, and the balance remaining due on the account is almost entirely covered by the deliveries shown on the group of tickets marked plaintiff's exhibit 7, which were received in evidence at the trial without objection. All of the payments made on this account were made by The Orondo Mines. No part of the materials in question were paid for by the owners of the property upon which the lien is claimed.

The evidence also discloses that all of the purchases of lumber were made from respondent corporation. Charles Rosefelt testified as follows: ''I believe it was about during the year 1934 that I first became connected with The Orondo Mines. I made quite a number of trips up there. I made some trips in 1934. When I went up there there were men on the property who were on the payroll, and there was a new hut being put up, accommodations for the men. I could see that. There was a whole row of bunkhouses, ten or twelve, possibly. There must have been lumber and other

706

building materials being used in the construction work on the properties at that time. I know there were men employed there, and that they had a regular payroll. Just at that particular time when I went there they weren't building perhaps, but they had already been completed. . . . I know about the purchase of lumber and other building materials by the corporation from Hayward Lumber & Investment Company during 1934, and 1935 and 1936. I first knew of the purchase of materials by the corporation from the Hayward Lumber & Investment Company when we first entered into an agreement with the Orondo. I saw the materials that were purchased from that company on the property many times, and saw them use it in the property."

Subsequent to the year 1936, appellants entered suit to declare the lease of the defendant corporation forfeited. We are of the opinion that there was ample evidence in the original delivery tickets and the testimony of the witnesses to show delivery of the materials to, and their use in, the mining property.

The judgment is affirmed.

Marks, Acting P. J., concurred.