## LUCK et al. v. BUFFALO LAKES, Inc., et al.

### No. 5210.

Court of Civil Appeals of Texas. Amarillo. Oct. 21, 1940.

Rehearing Denied Nov. 12, 1940.

Syrian E. Marbut, Geo. W. McCleskey, and Nelson & Brown, all of Lubbock, for appellants.

E. L. Klett, of Lubbock, for appellees.

JACKSON, Chief Justice.

The record shows that Buffalo Lakes, Incorporated, W. H. Rogers and George Etz owned and operated in Lubbock County what is known as Buffalo Lakes, an amusement center, which they had enclosed. In this enclosure the owners had constructed some lakes for the purpose of furnishing the public such recreation as fishing, boating and swimming.

They had built a boat house, kept boats for hire, had fishing accommodations and maintained a swimming pool. Near the dam of the large lake, which was something over one mile long and about seven or eight hundred feet wide, the owners deposited sufficient sand on the bank and on the bottom of the lake to create an artificial beach and a pool with a smooth level bottom which sloped gradually toward the center of the lake thereby creating the swimming pool the depth of which varied from zero at the edge of the beach to more than six feet at the termination of the artificial sand bottom and the water was deeper as the middle of the lake was approached after leaving the sand bottom. In front of the swimming pool the owners erected a bathing pavilion which they maintained for the accommodation of their patrons, charged a fee for admission into the amusement center and an additional fee for bathing, wading or swimming in the pool.

On June 5, 1939 Arthur Ben Luck, the son of J. M. Luck and his wife, Gertrude Luck, an unmarried youth seventeen years of age, in response to the invitation and solicitation of the owners, together with some friends of his attended Buffalo Lakes, paid the fee charged for admission into the amusement center and also the fee for the privilege of bathing in the pool and young Luck while wading therein lost his life by drowning.

This suit was instituted in the District Court of Lubbock County by J. M. Luck and his wife, Gertrude, the appellants, against the Buffalo Lakes, Incorporated, W. H. Rogers and George Etz, the appellees, to recover actual and exemplary damages aggregating $14,653 on account of the death of their son, Arthur Ben Luck, alleged to have been the proximate result of several acts of negligence on the part of appellees, their agents, servants and employees. The sufficiency of the pleading is not attacked and will sufficiently appear from the issues submitted to the jury and their answers thereto.

The appellees answered by general denial and charged the deceased with numerous acts of contributory negligence which they assert were the proximate cause of his death and these alleged acts will sufficiently appear from the special issues submitted thereon and the answers of the jury thereto.

The jury found in response to special issues submitted by the court in behalf of appellants that the appellees were guilty of negligence in the following particulars: failing to install markers showing the depth of the water in the pool at or near where the deceased was submerged; failing to install ropes by which a person might sustain himself at or near the place the deceased was submerged; failing to have on duty a competent and experienced life guard, and in failing to have on duty a person experienced in first aid treatment for drowning persons. However in response to special issues submitted in connection with these acts of negligence the jury found that no one of them was a proximate cause of the death of the deceased.

The jury found that appellants had suffered damage by reason of the death of their son in the sum of $780; that the reasonable and necessary funeral expenses incurred by them was $350 and a marker at the grave of the deceased could be obtained for the reasonable and necessary cost of $50.

On the issues of contributory negligence urged by the appellees and submitted by the court the jury found that the deceased did not knowingly go into the water to such a depth that he was in danger of drowning nor knowingly wade out into the water too deep for one not able to swim; that he did not wade out to where he knew he would lose his footing and that he did not go to a dangerous depth knowing the danger thereof, but they did find that the deceased was guilty of negligence in entering water to the depth he did when he could not swim and that such negligence proximately contributed to his death; that in going out to where he sank he failed to use ordinary care to watch where he was going, but such failure was not the sole proximate cause of his death.

On these findings judgment was rendered that appellants take nothing by their suit and appellees go hence with their cost.

The appellants challenge as error the action of the court in rendering judgment against them since they assert that the testimony shows with such certainty that the negligent acts of appellees or some one of such negligent acts were a proximate cause of the death of deceased that reasonable minds could not differ thereon.

The testimony is sufficient to warrant a finding by the jury that the body of the deceased was found in the water at or near the place where he sank approximately fifty feet from the water's edge where he entered the pool; that the bottom of the pool was level and smooth with a regular and gradual slope from the edge of the water to something over six feet in depth where the body of the deceased was located.

The deceased was seventeen years old at the time of his death. The appellants did not plead or prove want of discretion or any mental incapacity and the presumption is that he was a normal boy. Seinsheimer et al. v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063.

In addition to this presumption the testimony shows without dispute that the deceased owned an interest in a news stand, had regular employment, a good personality and executive ability which enabled him to manage others; was industrious, ambitious, trustworthy and intelligent.

The deceased had been to the pool three or four times that season prior to the day of his death. He walked over the bottom of the pool, sandy, smooth and level with its regular and gradual slope from the edge of the beach to where the body was found approximately fifty feet where he drowned. He knew deep water was dangerous and especially dangerous to people who could not swim. He knew people were drowned in the water. Every step forward after he entered the pool, which was some seven hundred or eight hundred feet wide, informed him that the depth of the water was increasing; that with each advancing step water rose higher around his body suggesting that he was approaching danger but, notwithstanding these impelling circumstances, he continued on his way until he was beyond his depth. These facts should have warned a person of ordinary prudence that the risk was becoming greater and the menace, hazard and peril into which he was walking was more certain as he advanced, but none of these caused him to stop or to seek safety and none of them deterred him from continuing into the deep water where he drowned. The jury found that his death was not an unavoidable accident and the record authorized the jury to conclude that since this unfortunate young man refused to heed these natural danger signals he would not have heeded artificial markers advising him of the depth of the water and, hence, the failure to install markers was not the proximate cause of his death.

The appellants do not seriously contend that the testimony shows with such certainty that reasonable minds could not differ thereon that the proximate cause of the death of the deceased was the failure of appellees to install a rope in or near the part of the pool where the deceased sank. They have set out no testimony in their brief and have not cited us to any place in the statement of facts where testimony may be found that would establish with certainty that the failure to install ropes was the proximate cause of the drowning. We are cited to no evidence that would have authorized the court to peremptorily instruct a verdict in favor of appellants on this issue or that would authorize this court to set aside the finding of the jury thereon.

The jury found that the failure to have on duty a competent and experienced life guard and the failure to have on duty a person experienced in treatment for drowning persons, though negligent, were neither a proximate cause of the death of the deceased.

The only testimony in the record on the question of proximate cause on these acts of negligence is the evidence of some life guards who gave their opinion as expert witnesses relative to the time it would have required a competent life guard to have reached the deceased after his danger was observed and the testimony of some physicians who gave their opinions as experts on the probability of resuscitating a person after he had been submerged in the water several minutes.

The jury with all the facts and circumstances before them either found that the testimony was insufficient to show proximate cause or discarded the expert testimony which under the law they are authorized to do.

In Texas Employers' Ins. Ass'n v. Humphrey, Tex.Civ.App., 140 S.W.2d 313, 316, writ refused, this court held:

"In National Life & Accident Co. v. Muckelroy et al., Tex.Civ.App., 40 S.W.2d 1115, 1117, the court says: 'That opinion testimony of physicians is but advisory in nature and may be disregarded by the jury if they see fit.'

"In American National Insurance Co. v. Park, Tex.Civ.App., 55 S.W.2d 1088, 1090, the court says: 'The jury had the right to discard the testimony of appellant's medical examiner as an interested witness.'

"See also Southern Underwriters v. Stubblefield, Tex.Civ.App., 108 S.W.2d 557.

"The probative force to be given to the testimony of experts is within the province of the jury and there is no rule of law which requires them to give conclusive effect to such testimony. Hodges v. Hodges, Tex.Civ.App., 111 S.W.2d 779; Traders & General Ins. Co. v. Ray, Tex.Civ.App., 128 S.W.2d 80."

In our opinion the testimony on the issues of proximate cause on the acts of negligence relied on by the appellants was not so certain that reasonable minds could not differ thereon, was not so conclusive as to authorize the court to direct a verdict in behalf of appellants on these issues, and the findings of the jury thereon were binding on both the trial court and this court since proximate cause is a fact issue to be determined by the jury unless the court can say as a matter of law that proximate cause was established. Seinsheimer et al. v. Burkhart, supra; Henry v. Publix Theatres Corporation, Tex.Civ. App., 25 S.W.2d 695. The rule as deduced from the authorities is thus stated in 30 Tex.Jur. 723, para. 62: "Nothing is better settled than that the question as to whether an act of 'negligence' was the 'proximate cause' of an injury is a fact issue."

Proximate cause was not made to appear as a matter of law and the appellees were entitled to a judgment independent of the issues on contributory negligence.

The appellants assail as error the action of the court in rendering judgment against them because they maintain there is an irreconcilable conflict between the findings of the jury on Issues Nos. 21, 24, 27 and 36 and Issues Nos. 33 and 34, all of which pertain to the contributory negligence of the deceased. In Issue No. 21 the jury found in effect that the deceased did not knowingly go into the water to such a depth that he was in danger of drowning; in Issue No. 24 that the deceased did not knowingly wade out into water too deep for one not able to swim; in Issue 27 that he did not knowingly wade out into the water where he knew he would lose his footing, and in No. 36 that in entering the water to a dangerous depth the deceased did not do so with knowledge of the danger.

It will be observed that each of these issues submitting contributory negligence

was based on the knowledge that deceased had of the danger to which he was subjecting himself. In Issues Nos. 33 and 34 the jury found in effect that the deceased was guilty of negligence in entering the water to the depth he did when he could not swim and that such negligence proximately contributed to his death. It will be noted that the last two issues submit contributory negligence and proximate cause on the law of imputed knowledge; that is, such knowledge as one should acquire in the exercise of ordinary care.

In determining conflicts in the findings of a jury in Casualty Underwriters v. Rhone et al., 134 Tex. 50, 132 S.W.2d 97, 99, the court said: "It will never be presumed that jurors intend to return conflicting answers, but the presumption is always to the contrary. Courts properly refuse to strike down answers on the ground of conflict, if there is any reasonable basis upon which they may be reconciled. This is elementary."

Were the facts such as would sustain the findings of a jury that the deceased was chargeable with imputed knowledge?

In Ebersole v. Sapp, Tex.Com.App., 208 S.W. 156, 157, the court holds: "Negligence can only be predicated upon knowledge, actual or constructive. Ignorance of facts exonerates from liability, unless such ignorance is culpable. Culpable ignorance is that which results from a failure to exercise ordinary care to acquire knowledge. Knowledge which could be acquired by the exercise of ordinary care is by the law imputed to the person, and he is held to have constructive knowledge."

In Texas & P. Ry. Co. v. Wylie, Tex. Civ.App., 36 S.W.2d 238, 242, the law is announced in the following language and supported by numerous citations: "It is the essence of contributory negligence that the person to be charged therewith knew, or by the exercise of ordinary care should have known, of the circumstance or circumstances out of which the danger arose. Texas & P. Ry. Co. v. Best, 66 Tex. 116, 118, 18 S.W. 224; Koons v. Rook (Tex.

Com.App.) 295 S.W. 592, 597, par. 15; El Paso Printing Co. v. Glick (Tex.Civ. App.) 246 S.W. 1076, 1079, par. 5; Armstrong Packing Co. v. Clem (Tex.Civ.App.) 151 S.W. 576, 578, par. 3 (writ refused); St. Louis Expanded Metal Fireproofing Co. v. Dawson, 30 Tex.Civ.App. 261, 70 S.W. 450, 451, 453 (writ refused); Gulf, C. & S. F. Ry. Co. v. Smith (Tex.Civ.App.) 148 S.W. 820, 822, par. 1; Boltinghouse v. Thompson (Tex.Civ.App.) 12 S.W.2d 253, 254, par. 1; 45 C.J., p. 651, §§ 24 and 25; Id., p. 946, § 506; 20 R.C.L., pp. 107 et seq., pars. 93 and 94."

See also Barnes v. Honey Grove Natorium Co. et al., Tex.Civ.App., 228 S. W. 354; Texas & P. Ry. Co. v. Howell, Tex.Civ.App., 117 S.W.2d 857.

We deem it unnecessary to recite again the circumstances and facts disclosed by the testimony relative to the pool, its size, construction, level bottom, the gradual increase in the depth of the water, the distance the deceased proceeded into the pool, the depth of the water where the body was found; that he knew he could not swim; that he had visited the pool previously, which, with other circumstances, we think were sufficient to authorize a finding that by the exercise of ordinary care the deceased would have realized his peril and stopped before going beyond his depth. This issue was, we think, included in the finding of the jury in answer to Special Issue No. 33, but if not, the presumption is that the court determined this issue in favor of his judgment. Wichita Falls & Oklahoma Ry. Co. et al. v. Pepper, 134 Tex. 360, 135 S.W.2d 79. In our opinion there is no irreconcilable conflict in the issues attacked when considered in the light of the facts and the law.

The appellants complain of the action of the court in admitting over their objection certain impeaching testimony relative to the evidence of Ted Glover. This testimony related to issues found by the jury in favor of appellant and if erroneously admitted the error was harmless.

The judgment is affirmed.