**BUTTREY FOOD STORES DIVISION,**
Jewel Companies, Inc., a New York
Corporation, Appellant (Defendant),

v.

Ruthe COULSON, Appellee (Plaintiff).

No. 5251.

Supreme Court of Wyoming.

Dec. 3, 1980.

Thomas D. Roberts of Morgan & Brorby, Gillette, for appellant.

Don M. Empfield and Willis Geer of Geer & Empfield, Gillette, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

THOMAS, Justice.

The appellant, Buttrey Food Stores Division, Jewel Companies, Inc., challenges the sufficiency of the evidence to support the judgment of the trial court in a case involving personal injuries sustained in a fall on the appellant's business premises. Specifically the appellant urges error in the allocation of one hundred percent of the causative negligence to it; the insufficiency of evidence of permanent injury; excessiveness of the judgment; excessive cost allowance for an expert witness; and the failure of the appellee, Ruthe Coulson, to plead the amount of her damages. We shall affirm the judgment of the trial court which was entered after a trial to the court without a jury except as to the issue of excessive costs. We will reverse the award of costs and remand the case to the trial court for a proper determination of the costs to be awarded.

As more completely stated in the briefs of the parties, the issues presented are as follows:

"1.  THE SUFFICIENCY OF THE EVIDENCE PRESENTED TO SUPPORT A FINDING OF 100% NEGLIGENCE ON THE PART OF DEFENDANT–APPELLANT AND 0% NEGLIGENCE ON THE PART OF PLAINTIFF–APPELLEE.

"2.  THE FAILURE OF PLAINTIFF TO SPECIFICALLY ALLEGE IN HER COMPLAINT OR REVEAL IN ANSWERS TO INTERROGATORIES THE PARTICULAR DAMAGES SOUGHT TO BE RECOVERED.

"3.  THE SUFFICIENCY OF THE MEDICAL EVIDENCE PRESENTED TO SUPPORT A FINDING OF ANY PERMANENT INJURY ARISING FROM THIS FALL.

"4.  THE EXTREME EXCESSIVENESS OF THE JUDGMENT ENTERED IN VIEW OF THE MEDICAL AND OTHER EVIDENCE PRESENTED.

"5.  THE EXCESSIVENESS OF THE EXPERT WITNESS FEE ALLOWED AS A COST."

The material operative facts in this case are not complicated. On January 20, 1979, Mrs. Coulson fell while entering the Buttrey Store in Gillette, Wyoming. The weather that day was clear and bright but there was an accumulation of snow and ice on the ground. It was a bit messy and slushy underfoot, and it appeared that the temperature was above freezing. Mrs. Coulson was wearing shoes with soft rubber soles. Accompanied by a friend with whom

she had lunched, Mrs. Coulson went to the Buttrey Store in the early afternoon. There was a large amount of ice in the store parking lot. Mrs. Coulson entered through the northwest doors, which consist of an inner door and an outer door. There was a rubber mat between the two doors and in addition a cloth–type mat three feet by six feet was placed between the outer and inner doors. Inside the inner door was another cloth mat three feet by six feet, and beyond that was a tile floor. The assistant manager testified that there were spare mats available at the store which were not in use. These mats were rented under an arrangement that cost Buttrey's $5.00 each time fresh mats were exchanged for soiled ones.

Immediately upon stepping off the cloth mat onto the tiled floor Mrs. Coulson fell. She stepped off with her right foot and fell first on her right knee. She then fell full length on the floor, and her right shoulder, right sleeve, right leg and hip area were wet when she got up from the floor. A store employee stated that he could observe a skim of water on the floor adjacent to the mat from the checkstand some 20 feet away.

Mrs. Coulson evidenced pain immediately in her countenance. She complained of pain to a store employee. After she got up she walked haltingly and had to hang onto something. There was pain localized in her kneecap shooting in both directions, and her knee felt progressively worse all the time and began to swell.

After she had completed her errand at the Buttrey Store her friend took her directly to the emergency room at the hospital. At this time Mrs. Coulson looked like she was strained and hurting. She was examined, and X rays were made, and her knee was wrapped with an Ace bandage. The following Monday she saw her family physician, who examined her and suggested she go home and keep her leg elevated. She was bedridden for about two and one–half weeks, and it was two months before she could stand with any assurance. She had to elevate her leg at work.

Mrs. Coulson previously had suffered an injury to this knee. She testified, however, that that injury had healed, and prior to the accident she walked without a limp and her knee was not at all unstable. After the fall she walked more slowly and haltingly. She sought support and the knee was unstable. She had difficulty driving her car. She gave up exercises that had been suggested because they were too painful. She stopped watching television because it was difficult to traverse the stairway to the basement of her home. She stopped attending meetings and church events. She did not visit the Senior Citizens Center as had previously been her habit.

Mrs. Coulson was employed as a proofreader at the Gillette News Record prior to the fall where she earned $3.75 an hour and usually worked a 25–hour week. She also did tutoring for homebound students, and was paid at the rate of $5.00 an hour for such tutoring by the school district. She had medical bills of $138.72, and a loss of earnings of $600.00. A medical doctor who specializes in orthopedics testified as to his examination of Mrs. Coulson's knee. He found that there was some limitation of range and the evidence of the prior injury was apparent. Her kneecap felt large and was somewhat misshapen. He found evidence of arthritic spurs and what he described as extensive degenerative arthritis. A significant fall could aggravate the arthritis that was present and could cause discomfort in addition to aggravating the arthritis. He did observe atrophy of the thigh muscles which could be attributed to bed rest of two to four weeks. In his opinion Mrs. Coulson would benefit from a patellectomy, which is the removal of the kneecap. The medical expenses for that procedure would be approximately $800.00

The case was tried to the court without a jury, and a judgment was entered in favor of Mrs. Coulson. In the judgment the trial court apportioned negligence by ascribing 100 percent to the appellant and none to Mrs. Coulson. Damages were awarded to Mrs. Coulson in the amount of $10,207.29. (There is an inconsistency in the judgment

and it may be 28 cents instead of 29 cents.) Mrs. Coulson also was awarded costs in the amount of $690.50. On appeal the appellant attacks all aspects of the judgment.

■ The appellant concedes the store owner owes a duty to those whom he has expressly or impliedly invited to come on his premises to be reasonably sure that he is not inviting them into danger, and he must exercise ordinary care and prudence to render his premises reasonably safe to visit. There is no difference with respect to that duty between the majority of the court and those members who are dissenting in part and concurring in part. The store owner must use ordinary care to keep the premises in a safe condition, and he is charged with an affirmative duty to protect visitors against dangers known to him and against dangers which he might discover by use of reasonable care. *Dudley v. Montgomery Ward & Co.*, 64 Wyo. 357, 374, 192 P.2d 617, 622 (1948); *Rhodes v. El Rancho Markets*, 9 Ariz.App. 576, 581, 454 P.2d 1016, 1021 (1969); *Shutt v. Kaufman's, Inc.*, 165 Colo. 175, 180, 438 P.2d 501, 503 (1968); *Pushard v. J. C. Penney Company*, 151 Mont. 82, 85, 438 P.2d 928, 929 (1968); *Safeway Stores, Incorporated v. Keef*, Okl., 416 P.2d 892, 894 (1966); *Glover v. Montgomery Ward and Company*, Okl.App., 536 P.2d 401, 408 (1974); and *Pribble v. Safeway Stores, Inc.*, 249 Or. 184, 191, 437 P.2d 745, 749 (1968). Cf., *Honan v. Moss*, Wyo., 359 P.2d 1002, 1006–1007. This concord may serve to distinguish that portion of the opinion of the court in *Dudley v. Montgomery Ward & Co.*, supra, at 192 P.2d 630, which states:

" * * * we cannot perceive that if it be claimed that plaintiff slipped as a result of the combination of her wet shoes and the slush and water tracked in by the store's customers, there could be predicated thereon any failure on defendant's part to perform a duty which it owed the plaintiff. * * * "

It well may be, however, that we have effectively departed from that aspect of the court's opinion.

The appellant, however, does rely upon the case of *Dudley v. Montgomery Ward & Co.*, supra, in arguing further that:

" * * * Assuming that the proof does show a dangerous floor condition did exist, unless the condition was one created by the proprietor himself or under his authority, a plaintiff must show, in order to recover on a theory of negligence that the proprietor had actual notice of the condition, or that it had existed for such a length of time that in the exercise of ordinary care the proprietor should have known of it and taken remedial action, *Dudley v. Montgomery Ward and Company,* 1948, 64 Wyo. 357, 192 P.2d 617, Annot. Slippery Floor–Injury, 62 A.L.R.2d 6, Prosser, Law of Torts § 61 (1971), *Martin v. Safeway Stores, Inc.*, (Utah 1977), 565 P.2d 1139. * * * "

The appellant states this argument in another way as follows:

" * * * Without some even minimal showing that the proprietor knew of the situation, or by the passage of time should have known of it, the Plaintiff–Appellee's proof has failed, thus she has no basis upon which to recover. * * * "

Given the circumstances of this case, the better rule is stated in *F. W. Woolworth Co. v. Stokes*, Miss., 191 So.2d 411, 416 (1966), as follows:

" * * * when plaintiff has shown that the circumstances were such as to create a reasonable probability that the dangerous condition would occur, he need not also prove actual or constructive notice of the specific condition, in this instance a specific puddle of water. * * * "

Other cases involving hazards other than those caused by weather expressing the rule set forth above can be found in Annotation, 85 A.L.R.3d 1000 (1978).

While the nature of the condition was different, the rationale expressed by the Supreme Court of Colorado for elimination of proof of actual or constructive notice of the specific condition is persuasive:

"The basic notice requirement springs from the thought that a dangerous condition, when it occurs, is somewhat out of the ordinary. Such was the case under the facts of *Woolworth v. Peet*, 132 Colo.

11, 284 P.2d 659 (1955), and *Denver Dry Goods v. Pender*, 128 Colo. 281, 262 P.2d 257 (1953), which the defendant has urged upon us. In such a situation the storekeeper is allowed a reasonable time, under the circumstances, to discover and correct the condition, unless it is the direct result of his (or his employees') acts. However, when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves. Then, actual or constructive notice of the specific condition need not be proved. *Bozza v. Vornado*, 42 N.J. 355, 200 A.2d 777 (1964)." *Jasko v. F. W. Woolworth Co.*, 177 Colo. 418, 494 P.2d 839, 840 (1972).

The Colorado Supreme Court went on to point out that this concept had been applied, although not specifically discussed, in *Denver Dry Goods Company v. Gettman*, 167 Colo. 539, 448 P.2d 954 (1969), a case factually similar to this case.

The dissenting and concurring justices would affirm on the basis of holding that the notice requirement was satisfied by the evidence in this case. There is no testimony from the employee who observed the water on the floor, however, as to when he observed it or to indicate in any way how long the water may have been there prior to Mrs. Coulson's fall. We conclude that it is not necessary to infer the requisite notice from this evidence. In an instance such as this where the existence of water on the floor of the store premises was a reasonable probability because of the weather conditions no proof of actual or constructive notice is required. The abrogation of any requirement that actual or constructive notice of the specific dangerous condition be established in such an instance does not make the store proprietor an insurer of the safety of his customers. The question of negligence under the applicable standard is still presented to the trier of fact, who is charged with comparing the respective negligence of the plaintiff and the defendant. Proof of actual knowledge should be a factor in arriving at the decision as to the respective percentages of negligence. It

might well lead to an apportionment of 100 percent to the defendant as occurred in this instance. Certainly the evidence is sufficient to support the trial court's judgment in this regard. See, e. g., *Champion Ventures, Inc. v. Dunn*, Wyo., 593 P.2d 832, 834–835 (1979); *Meeker v. Lanham*, Wyo., 604 P.2d 556, 559–560 (1979); and *Sagebrush Development, Inc. v. Moehrke*, Wyo., 604 P.2d 198, 200–201 (1979) (citing *Lusk Lumber Co. v. Independent Producers Consolidated*, 35 Wyo. 381, 249 P. 790 (1926), reh. den. 36 Wyo. 34, 252 P. 1029 (1927)).

Without citing authority, appellant apparently recognizes the significance of our statement in *Chrysler Corporation v. Todorovich*, Wyo., 580 P.2d 1123 (1978), that ordinarily the question of negligence under the comparative negligence statute is one for the finder of fact. This appears to be so because still relying upon *Dudley v. Montgomery Ward & Co.*, supra, the appellant argues that in this instance some negligence must be ascribed as a matter of law to Mrs. Coulson. Appellant contends that in the exercise of ordinary care she would have worn overshoes or boots, which she did not, and that she was admittedly inattentive as to where she was walking. The record would indicate that Mrs. Coulson was not inattentive and that she was wearing soft rubber shoes at the time of her fall. Whether these factors under the usual rules manifested negligence upon the part of Mrs. Coulson has to be a question to be resolved by the finder of fact, in this case the district court. We expand upon what we said in *Chrysler Corporation v. Todorovich*, supra, by saying that while the apportionment of negligence may be affected in the trial court by a conclusion of the court that as a matter of law one party had not been guilty of negligence, the apportionment of negligence is a matter purely for the finder of fact, and there is no rational basis that any reviewing court could rely upon in attempting to adjust the percentages of negligence attributed to the parties by the finder of fact.

■ Turning now to the failure of plaintiff to specifically allege in her complaint or reveal in answers to interrogatories the particular damages sought to be recovered, we find no reversible error in this claim. It appears that the plaintiff made every effort to make her complaint comply with § 1–1–114, W.S.1977. That statute provides:

> "The ad damnum clause or prayer for damages incorporated in a pleading which sets forth a claim for relief based upon personal injury or wrongful death shall not state any dollar amount as alleged damages or demand a sum as judgment other than an allegation that the damages are of an amount necessary to establish jurisdiction of the court. * * * "

This statutory provision was considered by this court in *Johnson v. Safeway Stores, Inc.,* Wyo., 568 P.2d 908 (1977), and the conclusion reached by the court was that the language of the statute makes it clear that the plaintiff shall not allege a dollar amount as damages. Obviously we cannot find error in the failure of a plaintiff to specifically allege in her complaint the particular damages sought to be recovered, given our previous construction of this statute. The appellant in its argument recognizes the effect of this statute, but argues that there was an inadequate response to its Interrogatory Number 6, the question and answer reading as follows:

> "6. Please itemize your alleged damages.
> "ANSWER: Special damages known at this time are these: Medicals, $122.72 and Lost Wages, $625.00."

We cannot read into that response any intention to waive general damages, and certainly the appellant could not rely upon that since the sum of the two amounts set forth in the Answer is less than the jurisdictional allegation in the Complaint. We note that the record discloses no effort on the part of appellant to follow up the information set forth in the answer to the interrogatory. From the record here, Mrs. Coulson's deposition was not taken and there was no effort to require any further answer to this interrogatory. The only complaint made to the trial court occurred during Mrs. Coulson's testimony at a point at which she was explaining her loss of wages. The claim made by the appellant at that point was that the testimony was objectionable because it would be expanding upon the amount claimed as loss of wages in the answer to the interrogatory. The objection made by the appellant was limited in that fashion, and the response from Mrs. Coulson was that she would not attempt to show losses other than $600.00 but was simply presenting evidence tending to show that a minimum of $600.00 in lost wages had been incurred as damages to Mrs. Coulson.

■ Upon analysis of the record, it appears clear that no complaint was made in the trial court with respect to general damages. The appellant here argues, however, that "because of her failure to allege general damages and the answers to Defendant–Appellant's interrogatories, Plaintiff–Appellee should be precluded from any recovery of general damages on the basis of unfair surprise." We therefore hold that this argument falls under our rule that we will not consider matters raised for the first time on appeal unless they go to jurisdiction or are otherwise of such a fundamental nature that the court must take cognizance of them. *Scherling v. Kilgore,* Wyo., 599 P.2d 1352 (1979). We do add, however, that the contention that a defendant in a personal injury case would be surprised by evidence tending to show general damages is a claim of error out of which no prejudice could flow. General damages are such an inherent aspect of any personal injury case that a claim such as appellant makes of surprise at offered proof of such damages must be viewed as only technical in nature. Without more record support of the attack upon the position of Mrs. Coulson this court, if it were to consider this claim of error, would conclude that no error occurred.

■ We treat together the third and fourth issues raised by the appellant. Both of these claims of error can be disposed of by referring to *Mariner v. Marsden,* Wyo., 610 P.2d 6 (1980). The appellant here contends that the testimony of the expert

medical witness was inadequate to support a causative effect producing any permanent physical harm to the appellee. *Mariner v. Marsden*, supra, cannot be read otherwise, however, than as holding that other evidence, even in the absence of expert medical testimony, can be sufficient to support an award of general damages by a trial court. In the statement of facts set forth above we have noted the problems which Mrs. Coulson encountered after this fall, and testimony as to pain and suffering. We noted that her activities have been curtailed in significant respects, and having also held in *Mariner v. Marsden*, supra, that it is proper to award damages for loss of enjoyment of life, we conclude that the evidence in this case was ample to support the award of damages by the trial court. The appellant argues further, however, that in any event the amount awarded was excessive. Again in *Mariner v. Marsden*, supra, we relied upon earlier authorities setting forth the proposition that the amount to be assessed for damages suffered by a plaintiff as a result of personal injuries is a matter within the sound discretion of the trier of fact. In this instance we do not find anything in the record indicating passion or prejudice on the part of the district judge, and the amount awarded, considering the evidence of the change occurring in Mrs. Coulson's life after this injury, does not shock our collective judicial conscience. *Brittain v. Booth*, Wyo., 601 P.2d 532 (1979), and authorities cited therein.

Finally, turning to the appellant's claim that the award of costs was excessive, we are compelled to afford relief as to this aspect of the case. We do not know how much of the costs awarded are attributable to the expert witness' fee. There is in the record no statement of any sort setting forth the costs which were awarded to Mrs. Coulson. Undoubtedly the expense for the expert witness represented a substantial portion of the costs. A trial court does have discretion to award more than $25.00 as a witness fee to an expert witness. Section 1-14-102, W.S.1977, provides for "such other amount as the court allows according to the circumstances of the case." In *Rob-*

*erts Construction Company v. Vondriska*, Wyo., 547 P.2d 1171 (1976), this court considered an award of costs for a survey of real estate. We there held that the expense did not appear to be necessary, and that there was no evidence as to the reasonableness of the charges, which we said was required before costs could be awarded. While we have approved an award of substantial personal injury damages in the absence of medical testimony, we noted that the tactic of not presenting professional medical evidence "reeks of risk," *Mariner v. Marsden*, supra, at p. 8. We would not, therefore, dispute the necessity of the expert medical testimony here. Since we do not know, however, the amount awarded for the expert witness fee and since there is no evidence as to the reasonableness of that fee, the trial court did commit an abuse of discretion in awarding any amount in excess of $25.00. We must reverse the award of costs, and remand the case for a determination of the proper costs awardable as a matter of course to the prevailing party according to Rule 54(d), W.R.C.P. In so doing we express our disapproval of the practice of awarding costs in the absence of a filing with the court of an appropriate statement of the costs.

The judgment is affirmed insofar as the award of damages to the plaintiff is concerned. The judgment is reversed with respect to the award of costs, and the case is remanded to the district court for a proper determination of the appropriate costs to be awarded to the plaintiff.

ROONEY, Justice, dissenting in part and concurring in part, with whom RAPER, Chief Justice, joins.

I concur with the result of the majority opinion on all issues except the reversal and remand for determination of costs. On that issue, I dissent.

My concurrence with the result, however, is only because evidence was here submitted making an issue of fact as to the existence of "actual knowledge of the danger" and the "ability to discover it by use of reasona-

ble care." Evidence of the size of the puddle, its visibility from the checkout stand and the actual knowledge of it by a "sacker" employee was sufficient to establish a question of fact for determination by the fact finder.

I do not agree that negligence on the part of the storekeeper can be presumed from "a reasonable probability because of the weather conditions" as expounded by the majority opinion. In spite of its denial, such holding *does* make the storekeeper an insurer. It not only approaches res ipsa loquitur, it is res ipsa loquitur. The holding will engender legal action by charlatans who deliberately fall in a store during wet weather to recover payment for injuries previously inflicted at other locations. It will cause the storekeeper to have an employee precede the path of each shopper, mopping the way.

As later developed herein, the proper and long–established rule in slip and fall cases involving water, snow, etc., tracked into a store in inclement weather is that the storekeeper is not negligent absent a showing of actual or constructive knowledge of the dangerous condition and failure to correct it. Once evidence pertaining to such knowledge is presented, a question of fact exists and a motion for summary judgment will not lie. The determination of the fact finder will then control; and, if such knowledge is found to exist, the negligence can be apportioned by the fact finder between the storekeeper and the plaintiff, with the 100 percent total for comparative negligence purposes being apportioned to each between 0 percent to 100 percent in any proper ratio. But the threshold of actual or constructive knowledge of the specific danger is mandated.

The majority opinion quotes from *Jasko v. F.W. Woolworth Co.*, 177 Colo. 418, 494 P.2d 839 (1972) and it refers to other cases which are *not* slip and fall cases resulting from accumulations of snow, water, etc., from *natural weather conditions*. *Jasko* involved wax paper and debris from a pizza counter in the store. The element of constructive knowledge was, thus, present.

Constructive knowledge is that knowledge which can be acquired by the exercise of ordinary care, i. e., notice of circumstances which would put a prudent man on inquiry as to the specific fact in question. *Luck v. Buffalo Lakes*, Tex.Civ.App., 144 S.W.2d 672 (1940); *Hayward Lumber & Investment Co. v. Orondo Mines*, 34 Cal.App.2d 697, 94 P.2d 380 (1939); *Brophy v. Clisaris*, Mo. App., 368 S.W.2d 553 (1963); *First National Bank in Albuquerque v. Nor–Am Agricultural Products, Inc.*, 88 N.M. 74, 537 P.2d 682 (1975). *Denver Dry Goods Company v. Gettman*, 167 Colo. 539, 448 P.2d 954 (1969), cited in the majority opinion, improperly relied on *Jasko* in a slip occasioned by tracking of slush into the store. The other case cited in the majority opinion for its position, *F.W. Woolworth Co. v. Stokes*, Miss., 191 So.2d 411 (1966), recognized the majority of jurisdictions were not in accord with its holding.

In slip and fall cases, the presence of inclement weather does not establish constructive knowledge of the existence of specific deposits of snow, water, etc., from inclement weather on the storekeeper's premises. Such cases differ from those in which the deposit is from other than natural causes. The spraying of water from produce sprinklers and the presence of lettuce prunings made by an employee are examples of the latter in which constructive knowledge has been held to exist. See cases cited in the majority opinion.

With reference to the remand for determination of costs, I believe the record is adequate to reflect the reasonableness thereof.

On August 1, 1980, I presented a suggested opinion to other members of the court. The majority did not agree with the suggested opinion. The suggested opinion was substantially as follows, and I believe it reflects the proper disposition to have been made of this case:

Appellee–plaintiff brought an action against appellant–defendant for damages resulting from injuries sustained in a fall on appellant's business premises in Gillette. The action was founded on alleged negli-

gence in allowing water to collect on the floor of the premises near its entrance. Judgment for $10,207.29 plus $690.50 costs was entered against appellant after a trial to the court. The court found 100 percent negligence on the part of appellant and 0 percent negligence on the part of appellee.

Appellant alleges error:

1. In that there was insufficient evidence to support the finding of 100 percent negligence on the part of appellant and 0 percent negligence on the part of appellee.
2. In that there was insufficient medical evidence to support a finding of permanent injury resulting from the fall.
3. In that the amount of the judgment was excessive.
4. In that the amount allowed for the cost of the expert witness was excessive, and
5. In the failure of appellee to allege in her complaint or in her answers to interrogatories the amount of damages sought by her.

## INSUFFICIENCY OF EVIDENCE

In gauging the sufficiency of the evidence to support the findings made by a fact finder in arriving at its decision, we treat the findings as presumptively correct and do not set them aside unless clearly erroneous or contrary to the great weight of the evidence. *Diamond Management Corporation v. Empire Gas Corporation,* Wyo., 594 P.2d 964 (1979); *Whitefoot v. Hanover Insurance Company,* Wyo., 561 P.2d 717 (1977).[1]

Appellant contends that in applying this standard, there was insufficient evidence to support the finding that appellant violated the duty owed by it to appellee, and that there was insufficient medical evidence to support a finding of permanent injury to appellee.

With reference to the contention concerning negligence, appellant recognizes the elements of negligence to be (1) a duty, (2) a violation of the duty, (3) proximately causing (4) damages. *Danculovich v. Brown,* Wyo., 593 P.2d 187, 195 (1979). It argues that there was no evidence of the violation of the duty or that such evidence was "so weak in fact as to be non–existent." I cannot agree.

The duty itself has been well established in law. The proprietor of a place of business is not an insurer of the safety of those coming upon his premises for business purposes, but he must use ordinary care to keep the premises in a safe condition; that is, he must accept an affirmative duty to protect them against dangers known to him and against dangers which he might discover by use of reasonable care. 62 Am. Jur.2d Premises Liability §§ 39 and 62; 65 C.J.S. Negligence §§ 63(121) and 63(124); *Bluejacket v. Carney,* Wyo., 550 P.2d 494 (1976); *McKee v. Pacific Power and Light Company,* Wyo., 417 P.2d 426 (1966); *Watts v. Holmes,* Wyo., 386 P.2d 718 (1963). See *Wheatland Irrigation District v. McGuire,* Wyo., 537 P.2d 1128 (1975), rehearing granted in part (on another issue) 552 P.2d 1115 (1976), rehearing 562 P.2d 287 (1977). This law is properly applied to "slip and fall" cases occasioned by water, mud or snow from inclement weather on the floor. 62 Am.Jur.2d Premises Liability § 219; 65 C.J.S. Negligence § 81(9); Annotation, "Liability of proprietor of store, office, or similar business premises for injury from fall on floor made slippery by tracked–in or spilled water, oil, mud, snow, and the like," 62 A.L.R.2d 6.

The evidence in this case was ample to support the finding that appellant did not satisfy the duty owed by it to exercise ordinary care and prudence in rendering its premises safe to visit.

At the time of the fall, appellee was 63 years of age. She and a friend entered appellant's store at about 1:00 or 1:30 p. m., January 20, 1979 to make a purchase. There was snow and ice on the ground.

---

1. Special findings of fact were not requested or made in this case. In the absence thereof, the judgment carries with it every finding of fact supported by the evidence. *Hendrickson v. Heinze,* Wyo., 541 P.2d 1133 (1975); *Zitterkopf v. Roussalis,* Wyo., 546 P.2d 436 (1976).

They entered the outside door, the threshold of which was spanned by a rubber mat. They then crossed a 3' × 6' mat between the outside door and the inside door. The threshold of the inside door was also spanned by a rubber mat. After entering it, they passed over another 3' × 6' mat. Appellee was preceding her friend, and as she stepped off this last mat, she stepped into a pool of water which caused her to slip and fall to the floor. A "sacker" employee of appellant testified that the pool of water was visible from the checkout stand about 20 feet distant. Appellee testified that the water made the right shoulder, right sleeve, right leg and hip area of her clothes wet. Her friend testified:

"Q. Approximately, what was the size of the water puddle?

"A. Oh, probably three feet, three feet one way and five feet another way.

"Q. How did you come to notice the size of the wet spot?

"A. By the fact that Mrs. Coulson was laying in the water, and I wanted to get her out of it.

"Q. Were her clothes wet?

"A. Yes.

"Q. What portion of her clothes were wet?

"A. All down the side that she was laying on.

"Q. Was she wet on the shoulders?

"A. Yes, she was.

"Q. On the sleeve?

"A. The sleeve.

"Q. And, the hip area?

"A. And the hip area.

"Q. And the leg?

"A. And the leg."

A puddle of water of a size 3' × 6', not only noticeable from the checkout stand but noticed by a "sacker" employee, is a danger which the fact finder could find was known to appellant (through the sacker) or at least one which the fact finder could find that appellant should discover through use of reasonable care. Such findings were here made by the trial court, and it cannot be

said that the findings were clearly erroneous or contrary to the great weight of the evidence.

Negligence cannot be presumed from the mere happening of an accident. *Mellor v. Ten Sleep Cattle Company*, Wyo., 550 P.2d 500 (1976); *Jivelekas v. City of Worland*, Wyo., 546 P.2d 419 (1976). Nor are the facts that water is on the floor and that such occasioned a fall sufficient to establish negligence. *Dudley v. Montgomery Ward & Co.*, 64 Wyo. 357, 192 P.2d 617 (1948); Annot., 62 A.L.R.2d 6, supra.

However, "slip and fall" cases cannot command a special place in the law of negligence. "Slip and fall" cases must meet the same relative standards as other negligence cases—no more, no less. The duty owed by a proprietor of a place of business to one coming on the premises for a business purpose is set forth supra. The violation of this duty is that action or inaction which is other than that which a reasonable man of ordinary prudence would take under the same or similar circumstances. Whether or not such a man would have removed or alleviated the danger resulting from snow, water, etc., on the floor is a question of fact to be determined by the fact finder. The volume of the water, snow, etc., the length of time it has been on the floor, the location of the deposit within the store, the cause of the deposit, actual or constructive knowledge of the deposit by the proprietor or his agent, and similar factors will enter into the determination of whether or not an issue of fact exists, and, if so, whether or not the standard of reasonable care has been met. Of course, the other two elements of negligence, i. e., proximate cause [2] and resulting damages must be established. If an issue as to the existence of such factors is properly indicated, summary judgment will not lie—insofar as the element of violation of duty is concerned. If such issue is presented, a directed verdict will not lie—insofar as the same element is concerned.

2. In this case, appellee testified that the fall resulted from stepping in the water.

Appellant also questions the percentage of negligence attributed to the parties by the trial court. Appellant contends that appellee was not wearing the proper shoes and did not take proper precautions for her own safety in view of the snowy weather. Although appellee was not wearing over-shoes or boots, her shoes had soft rubber, corrugated "ground–gripper" soles. There was evidence that she entered the store in the regular and usual fashion. The finding of 100 percent negligence on the part of appellant and 0 percent on the part of ap-pellee is not ipso facto suspect. Prior to the enactment in 1973 of our comparative negli-gence statute, § 1–1–109, W.S.1977, such a finding was necessary for any recovery by a plaintiff. The evidence here was such that the trial court could find that appellee was not negligent.

With reference to the contention that there was insufficient medical evidence to support a finding of permanent injury re-sulting from the fall, it should be noted that the court did not allocate the damage award to specific items, i. e., to permanent injury or otherwise. That there was evi-dence upon which to base the award is indicated in the next section of this opinion. Causal connection between the accident and the medical expenses and loss of wages was established. Medical testimony is not nec-essary to establish a causal link between a violent occurrence and soreness and pain which began immediately thereafter. *Mari-ner v. Marsden*, Wyo., 610 P.2d 6 (1980). Appellee's testimony concerning her pain and the resulting impairment of activities was supported by testimony of two other witnesses. The lack of medical testimony in this respect is not fatal to the award.

## EXCESSIVE AWARD

Evidence was presented reflecting an ex-pense of $138.72 for past medical expense, $960.00 for future medical expense, $600.00 for lost wages. There was evidence that appellee was bedridden for two and one–half weeks; that her leg would not bear her weight for two months; that she could not move about after the accident in the same fashion as before the accident; that she could no longer drive an automobile for long periods of time; and that she could not attend functions where she had to ascend stairs. Pain and suffering were indicated. See *Mariner v. Marsden*, supra. All in all, there was substantial evidence upon which the award here made ($10,207.29) could be predicated. When there is substantial evi-dence or a conflict therein, we do not dis-turb the findings made by the fact finder. *Jelly v. Dabney*, Wyo., 581 P.2d 622 (1978); *Zitterkopf v. Roussalis*, supra, 546 P.2d 436. The award here made is not such as to shock the judicial conscience, and there is no indication or inference of passion, preju-dice or other improper cause in connection therewith. Such indication or inference is necessary to warrant modifying or revers-ing action on appeal. *Brittain v. Booth*, Wyo., 601 P.2d 532 (1979).

## EXCESSIVE COSTS

Although the record does not contain a bill of costs, the judgment awards appellee costs in the amount of $690.50. On the same day that the judgment was entered, appellant filed an "Objection to Taxation of Costs" in which he objects to the payment of "any expert witness fee in excess of the statutory fee of Twenty–five dollars ($25.00) per day as provided by § 1–14–102, Wyoming Statutes, 1977." The record does not contain an order on the objection, but I consider the judgment as rejecting the ob-jection. For the purposes of appellant's contention that an excessive amount was allowed for the cost of the expert witness, I will assume that the full amount of $690.50 awarded for costs was the cost of the ex-pert witness. Even so, I cannot say that the trial court abused its discretion in al-lowing such cost.

Section 1–14–102(b), W.S.1977 provides in pertinent part:

"(b) In any civil or criminal case, * * * the expert witness shall be allowed wit-ness fees of twenty–five dollars ($25.00) per day *or such other amount as the court allows according to the circumstances of the case.* * * *" (Emphasis supplied.)

Discretion as to the amount of the fee for an expert witness in excess of the $25.00 minimum is thereby placed in the trial court.

Appellee's expert witness was an orthopaedic surgeon practicing medicine in Sheridan. He testified in this matter on October 17, 1979 in Gillette. He obviously lost a day's income for October 17, 1979 in traveling from Sheridan and in testifying. He also gave a 40–page deposition which was taken at his office in Sheridan beginning at 2:30 p. m. on October 10, 1979. He therefore lost a few hours income on that day. While loss of income to the witness is not a standard by which witness fees are to be paid, such factor enters into the willingness and cooperation of witnesses in assisting the court and the ends of justice through the sharing of their expertise on the matters at hand.

In view of the nature of the expert testimony, the distance traveled and the time involved, I do not find an abuse of discretion by the trial court in the allowance of the costs for this witness in the amount of $690.50. As said in *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980):

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * *"

### FAILURE TO ALLEGE AMOUNT OF DAMAGES

In contending for error in the failure of appellee to allege in her complaint or in her answers to interrogatories the amount of damages sought by her, appellant argues that it was improperly and "totally in the dark and subject to surprise on the specific amount" of damages sought by appellee in the action until the time of trial.

In her complaint, appellee stated that her claim "exceeds One Thousand Dollars ($1,000.00) and is sufficient to establish jurisdiction of this court." In the prayer of the complaint, appellee demanded judgment "in an amount sufficient to compensate her for her all [sic] injuries suffered as a result of defendant's negligence as indicated by the facts and the law and for such other and further relief as the court deems proper." [3]

Among interrogatories directed to appellee by appellant was a request to "itemize your alleged damages." Appellee's response was: "Special damages known at this time are these: Medicals, $122.72 and Lost Wages, $625.00." Appellant did not take appellee's deposition; it did not make further inquiry concerning "general" damages; it did not object to the testimony by appellee and two other witnesses relative to the inability of appellee to perform tasks after the incident in the same fashion as such were performed by her prior to the incident; it did not object to testimony concerning pain and suffering; and a pretrial conference was not held. Generally, the record is barren of any effort to present this issue to the trial court.

Normally, we do not consider matters raised for the first time on appeal unless they go to jurisdiction or are otherwise of such fundamental nature that we must take cognizance of them. *Schaefer v. Lampert Lumber Company*, Wyo., 591 P.2d 1225 (1979); *Scherling v. Kilgore*, Wyo., 599 P.2d

---

**3.** The omission from the complaint of a dollar amount claimed for damages is a result of § 1–1–114, W.S.1977 which provides:

"The ad damnum clause or prayer for damages incorporated in a pleading which sets forth a claim for relief based upon personal injury or wrongful death shall not state any dollar amount as alleged damages or demand a sum as judgment other than an allegation that the damages are of an amount necessary to establish jurisdiction of the court. Nothing herein shall be construed to prevent any party from arguing to the court or jury the amount of his claim in money. In all cases the court shall inform the jury of the consequences of its verdict."

The constitutionality of this statute is not here contested. This court has not yet caused this statute to be superseded by rule.

1352 (1979). I will not here further consider this issue except to note that appellant has not set forth in what manner it is prejudiced by the lack of knowledge as to the extent of general damages claimed by appellee. If the exact amount of general damages were known to appellant, there is no suggestion that such would have enabled appellant to have obtained and presented counter evidence. Absent the showing of actual prejudice, the error, if any would be harmless.

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Rule 7.04, W.R.A.P.

I would affirm, but not for the reasons stated in the majority opinion.