**Steven Wayne MacLAIRD, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 85–163.

Supreme Court of Wyoming.

April 25, 1986.

---

Wyoming Public Defender Program, Leonard D. Munker, State Public Defender, Julie Naylor, Appellate Counsel, Cheyenne, Wyoming Defender Aid Program, Gerald M. Gallivan, Director, Raymond W. Martin, Student Intern, Laramie, for appellant (defendant).

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., John Renneisen, Sr. Asst. Atty. Gen., Darold W. Killmer, Legal Intern, Cheyenne, for appellee (plaintiff).

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Justice.

Appellant Steven Wayne MacLaird was found guilty of burglary by a jury and sentenced to a term in the penitentiary. On appeal he raises five issues:

"1. Can a person in custody, whose claimed personal property has been inventoried, segregated, and placed in a police evidence locker, have specific items seized without a warrant even if probable cause exists?

"2. May a prosecuting attorney give his personal affirmative unsworn testimony, while further demonstrating the evidence in an attempt to impeach an accused witness?

"3. May the prosecutor on cross-examination of the defendant inquire into charges against the defendant that were dismissed after the defendant entered a plea of guilty to two other counts?

"4. Is it prosecutorial misconduct to skillfully and persistently refer by innuendo and association of evidence, and alleged witness accomplices, to matters subject to a motion in limine?

"5. Was it reversible error for the trial judge to deny defense counsel's request for a jury instruction explaining the careful scrutiny that the jury should use in receiving the testimony of an accomplice against the accused?"

We have combined issues 2, 3 and 4 urged by appellant, rephrased the other two, and will address the following issues:

I

Were appellant's fourth amendment rights violated when the police transferred items appellant claimed as his from Delta, Colorado to Torrington?

II

Does the conduct of the prosecutor warrant reversal of appellant's conviction?

## III

Was it reversible error for the trial judge to refuse defense counsel's requested jury instruction that the jury should give careful scrutiny to certain testimony?

The Torrington Middle School was burglarized December 17, 1984. One Steven Teske fingered appellant and Troy Rosenbaum as his partners in crime, and stated that the trio had burglarized the school. Teske sang after he, Rosenbaum and appellant had been arrested in Delta, Colorado, as suspects in a local crime. They were in possession of a vehicle owned by a Mr. Haddorff. After a search warrant was obtained by Colorado authorities, goods involved in a Colorado robbery were seized. A few days after the arrest Mr. Haddorff consented to the search of his vehicle, and the Colorado police officers seized the remaining items of property in the car, which included the items stolen in the Torrington burglary. These items included a coffee hot pot, cash box and three pounds of coffee, which were inventoried, segregated and placed in the evidence locker of the Delta sheriff's department. Appellant claimed the coffee pot, cash box and can of coffee; the items were eventually transferred to the Torrington police department to be used in evidence. No warrant to seize these items was obtained.

Appellant was charged with burglary proscribed by § 6-3-301(a), W.S.1977 (June 1983 Replacement), to which he pled not guilty. Before trial appellant made a motion to suppress evidence taken from the vehicle that he was driving at the time of his arrest in Colorado. This motion was denied. On the morning of trial appellant made a motion in limine concerning alleged burglaries in Casper and Rock Springs for which no charges had yet been filed. The motion was granted. At trial appellant was found guilty as charged.

## I

The search of the car was authorized by the owner and appellant does not contend that the search was improper, nor does he question the propriety of the car's contents

being inventoried, segregated and placed in an evidence locker. Rather, appellant contends that the seizure of the items in the evidence locker of the Delta County sheriff's department was invalid because it was done without a search warrant.

Once an item has been seized in connection with a lawful search, as in this case, any expectation of privacy by a person claiming ownership is significantly reduced. An accused may claim the benefits of the exclusionary rule only if he first demonstrates that his legitimate expectation of privacy in that which was either searched or seized was violated. *Parkhurst v. State*, Wyo., 628 P.2d 1369 (1981), *cert. denied* 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981). Without such an expectation, a defendant cannot complain about the introduction of evidence at trial against him, whether or not it was seized legally. *Tompkins v. State*, Wyo., 705 P.2d 836 (1985).

The facts here illustrate the above principles. Appellant, along with the two other men, was arrested in Delta, Colorado; none of the three owned the car in which they were traveling. In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *reh. denied* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979), the United States Supreme Court upheld the decision of the Illinois Supreme Court that the search of a car not belonging to petitioner did not violate petitioner's rights, so it was unnecessary to decide whether the search may have violated someone else's rights. In this case, appellant could not have a reasonable expectation that items inside the borrowed car would remain private. Appellant did not meet his burden of demonstrating prejudice. *Scheikofsky v. State*, Wyo., 636 P.2d 1107 (1981); *Jackson v. State*, Wyo., 624 P.2d 751 (1981); *Mainville v. State*, Wyo., 607 P.2d 339 (1980).

After the vehicle had been searched with the owner's consent and the property that was later claimed by appellant had been seized, inventoried and segregated, the Colorado authorities received a list of stolen

property from authorities in Torrington, Wyoming. The list included the items claimed by appellant; he contends that the items in question were not searched for and seized incidentally to his arrest in Delta, Colorado. He argues, therefore, that probable cause to believe that these goods were stolen property from another crime should have been independently established by a magistrate.

■ Requiring a warrant for a further seizure after new information has been received regarding an item which has already been lawfully searched and seized would not provide any additional protection of an accused's privacy, and would be a useless and meaningless formality. *Hilley v. State*, Ala., 484 So.2d 485 (1985); and *U.S. v. Oaxaca*, 569 F.2d 518 (9th Cir.1978), *cert. denied* 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978).

■ Appellant apparently concedes that under the circumstances of this case his privacy interest was no longer present. He argues, however, that the interests of property to be secure against unreasonable searches remains. This argument is difficult to follow, and no authority is cited. It is difficult to see how a lawful search and seizure becomes unreasonable when new information is received linking the property seized with a crime not known to the authorities initially.

Appellant relies principally on *Ortega v. State*, Wyo., 669 P.2d 935 (1983), for his search and seizure argument. There, exigent circumstances were found to justify the search of a residence without a warrant at the scene of a murder. Upon searching the upstairs bedroom to determine if the defendant's wife was actually dead, the officers saw numerous items of evidence in plain view. Plain view of the scene gave the police probable cause to obtain a search warrant; however, the police proceeded without one. Later, upon reentry, various items were seized without a warrant including a number of guns and ammunition. At the time of seizure the police were uncertain which gun was the murder weapon; therefore, they seized all the guns found in the home. Subsequently, one of the guns and four bullets from its chamber were objects of a motion in limine which was overruled. On appeal the court held that the police did not have probable cause to believe that any particular gun was the murder weapon, and that the motion in limine should have been granted.

This case does not afford much comfort to appellant. In *Ortega* the initial seizure of some of the property was determined to be improper. Here, the initial search and seizure was legal in all respects. We have already explained why it was unnecessary to obtain a warrant to do that which had already been done.

Appellant's fourth amendment rights against unreasonable search and seizure were not violated.

## II

In appellant's argument that the prosecutor's misconduct warrants reversal of the verdict he focused on three areas as follows:

A. It was error for the prosecutor to try on a pair of boots with accompanying commentary.

B. Cross-examination of appellant regarding previous felonies included additional charges which were dropped.

C. The prosecutor circumvented an order in limine.

## A

■ At trial appellant maintained that he remained at the motel to rest while his confederates Teske and Rosenbaum burglarized the Torrington school. A snowboot print was found at the scene of the crime. A snowboot introduced into evidence, and allegedly worn by appellant at the Torrington school burglary, was size seven to eight.

In connection with appellant's testimony at trial he stated that his shoe size was ten and one-half; he also displayed to the jury the shoes he was wearing which showed the size of the shoe. On cross-examination

the prosecutor had appellant try on the boot in evidence; appellant said his toes were curled up in front and it felt like he was stepping on some kind of material in the back. At that time, the prosecutor said he (prosecutor) had a size ten and one-half foot, and offered to try on the boot. Over defense counsel's objection, the court permitted the prosecutor to put on the boot. Defense counsel requested the prosecutor be sworn if he was going to testify. While wearing the boot, the prosecutor walked back and forth in front of the jury, stating, "I would testify that they feel rather good."

Appellant contends that the prosecutor's statements and demonstration violated DR 7–106(C)(4), Wyoming Code of Professional Responsibility, which states:

"In appearing in his professional capacity before a tribunal, a lawyer shall not: * * * Assert his personal opinion as to the justness of a cause, as to the credibility of a witness * * * but he may argue, on the analysis of the evidence, for any position or conclusion with respect to the matters stated herein."

The prosecutor's remarks were improper, and the court should not have allowed such remarks to be made to the jury. Rule 49(a), Wyoming Rules of Criminal Procedure, provides:

"Harmless error.—Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Because of abundant direct evidence introduced against appellant we hold there is not a reasonable possibility that the verdict would have been different if the demonstration made by the prosecutor had been eliminated. We conclude, therefore, that any error or irregularity in permitting the demonstration was harmless error beyond a reasonable doubt. *Ortega v. State,* supra; and *Roberts v. State,* Wyo., 711 P.2d 1131 (1985).

### B.

On cross-examination appellant admitted without objection that previously he had been convicted of burglaries. On redirect examination a prior conviction was alluded to and appellant was further questioned as follows:

"Q. Did you go to trial or did you plead guilty?

"A. I pled guilty.

"Q. Why did you plead guilty?

"A. Because I was guilty.

"Q. Why didn't you plead guilty this time?

"A. Because I didn't do this."

On recross examination appellant tacitly admitted without objection that other charges were dropped when he pled guilty. Thereafter the prosecutor attempted to ask appellant if counts I, II, III, IV, VI, and VIII of the indictment were dropped when he pled guilty. Defense counsel objected and the question was never answered. The prosecutor continued with a line of questions designed to obtain an admission from appellant that he pled guilty in exchange for the state dropping other charges. Appellant steadfastly maintained that he pled guilty because he was guilty, and dropping the charges did not influence his plea of guilty. Both counsel tried to have the last word, and it was difficult for the attorneys to let go of appellant. Defense counsel pursued what might loosely be called re-redirect examination. The prosecutor did not try re-recross examination.

Appellant contends that it was error for the prosecutor to bring out in cross-examination that six additional charges had been dropped. We fail to see any significance in the prosecutor's suggestions that the charges dropped were, in fact, six in number. In any event, this line of questioning was invited by defense counsel.

Time and again appellant stated his motive for pleading guilty to a previous burglary. It was not an abuse of discretion for the trial judge to permit the state to attempt to show that appellant may have had a different motive to plead guilty, that is, to take advantage of a favorable plea bargain.

■ The credibility of a defendant in a criminal case may be tested and his testimony impeached like that of any other witness. When he testifies in his own behalf he has no right to set forth to the jury facts favorable to him without laying himself open to cross-examination upon those facts. *Brown v. United States*, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589, *reh. denied* 356 U.S. 948, 78 S.Ct. 776, 2 L.Ed.2d 822 (1958).

## C

Before their arrest in Delta, Colorado, appellant, Teske and Rosenbaum had been traveling men. Witnesses for the state had some information that this threesome may have had some involvement in burglaries in three other cities, Casper, Rock Springs and Salt Lake City.[1] Upon defense counsel's request a motion in limine was granted. The district court said:

"The Motion in Limine is sustained so far as Casper and Rock Springs are concerned. I'm not going to rule that it is as far as Delta, Colorado, because it is liable to come out because of evidence that will be there. I feel that it would be highly, highly prejudicial for the acts alleged in Rock Springs and Casper to come into evidence here, and the only purpose for that would be to show by prejudice that this man committed the crime here.

"Now, I have no doubt that at some time during the course of this trial some reference by some witness might accidently come into this, and I will handle it by instructions if it should come in, but as far as the prosecution going into the events that happened in Casper or Rock Springs for simply the purpose of showing that the events happened—or for that matter the events that happened or might have happened in Delta, Colorado, simply to show that they happened rath-

er than to show why this particular witness, and I understand there is going to be an officer from there who seized some evidence in issue in this case—will likewise be restricted. * * * "

Appellant contends that the prosecutor by innuendo, and otherwise, circumvented the court's order in limine. He complains that the prosecutor in his opening statement referred to appellant's prearrest activities as an "odyssey,"[2] and that his companions Teske and Rosenbaum had pled guilty to the Torrington burglary. No objection was made. In his opening statement the prosecutor further said, "I can only get into part of that Odyssey. * * * I am not going to get into any possible prior other stuff." This last statement indicated above prompted defense counsel's objection to the prosecutor's opening statement.

In addition to complaints regarding the opening statement, appellant also complains there was testimony that Teske had pled guilty to charges in Colorado. This testimony, however, was in answer to a question asked by defense counsel on cross-examination. A photograph of appellant taken when he was in jail was admitted in evidence over his objection. In other testimony reference was made to pawn shops, but no objection was made. Also, the car driven by appellant in Colorado was said to be borrowed. Appellant complains that this was an implication that the car was stolen. Incidental reference was made to drug paraphernalia found in the car used by appellant in Delta, Colorado. Most of the complaints now made by appellant regarding innuendo connecting him with other crimes were not raised at the trial.

■ Appellant sums up his complaint regarding violation of the order in limine by stating:

---

1. In the opening statement and testimony the cities of Rock Springs, Casper and Salt Lake City were merely mentioned in connection with the wanderings of appellant and his companions, but no testimony was produced regarding crimes in those areas.

2. The term odyssey does not have an iniquitous connotation. It is defined as: A series of adventurous journeys usually marked by many changes of fortune. Webster's Third New International Dictionary, p. 1564 (1966).

"The point is, that alone the errors may arguably not be prejudicial, but when viewed cumulatively they demonstrate a persistent pattern of prosecutorial misconduct. * * * "

In alleging cumulative error appellant has the prodigious burden of demonstrating that several harmless errors add up to reversible error.

One of appellant's problems in the alleged violation of the court's limiting order is that no objection was made at trial except as we have indicated. At least on one occasion the objectional testimony was elicited on cross-examination.

■ The trial judge did not think the limiting order had been circumvented. Certainly he was in the best position to know what the order proscribed and in the best position to enforce it. We must accord considerable deference to the trial judge's determinations. He is in a superior position to appreciate the context of the testimony and the impact it might have on the trial. *Yates v. Yates*, Wyo., 702 P.2d 1252 (1985). We are not persuaded that the prosecutor violated the limiting order nor that appellant suffered any prejudice.

### III

■ Appellant requested the following instruction:

"The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against the defendant."

The district court refused to give the instruction. We could uphold the court's determination for any one of several reasons:

1) An "informer" instruction was not applicable to the facts of this case.

2) We do not know the source of this instruction nor was any authority cited demonstrating its correctness in a proper case.

3) Appellant did not state the grounds for his objection and thus failed to comply with Rule 51, Wyoming Rules of Civil Procedure.

4) Other instructions adequately instructed the jury.

■ Appellant argues, in effect, that while his proposed instruction was an "informer" instruction it was meant to be an "accomplice" instruction. He further argues that there was enough in the proposed instruction to advise the court what he was trying to say, and that the court should have fashioned a correct instruction. In support of this argument appellant cites *Stapleman v. State*, Wyo., 680 P.2d 73 (1984).

The proposed instruction bears little resemblance to § 2.104 "Testimony of an Accomplice" of the Wyoming Pattern Jury Instructions Criminal, and appellant did not explain to the court why the instruction should be given as required by Rule 51, W.R.C.P.:

" * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections. * * * "

We cannot say that appellant was prejudiced because of the court's failure to give an "accomplice" instruction sua sponte. The court included in its instructions the following:

"The Jury is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. You should take into consideration their demeanor upon the witness stand, their apparent intelligence or lack of intelligence, *their means of knowledge of the facts testified to, the interest, if any, which any witness may have in the outcome of this trial, the prejudice or motives, or feelings of revenge*, if any, which have been shown by the evidence. In so doing, you may take into consideration all

of the facts and circumstances in the case and give such weight as you think the same are entitled to, in the light of your experience and knowledge of human affairs, which you share with mankind in general." (Emphasis added.)

This instruction seems to address the concerns that appellant has regarding the testimony of his companions who testified against him. In this instruction the court directed the jury to consider the interest, prejudice, motives or feelings of revenge of the witnesses.

The trial was not perfect; however, we are not persuaded that there was any reversible error.

Affirmed.