Lisa Lynn SEATON,
Appellant (Plaintiff),

v.

The STATE OF WYOMING HIGHWAY
COMMISSION, DISTRICT NO. 1,
Appellee (Defendant).

No. 88–284.

Supreme Court of Wyoming.

Dec. 7, 1989.

Charles E. Graves and Jane A. Villemez of Graves, Santini & Villemez, P.C., Cheyenne, for appellant.

Bruce A. Salzburg and Elizabeth Z. Smith of Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

Appellant Lisa Lynn Seaton (Seaton) presents herself as a passenger on a motorcycle who sued the driver and the Wyoming State Highway Commission (Highway Department) for extremely serious injuries sustained when the motorcycle skidded through loose gravel on the highway and battered her against a sign post. On appeal, following her favorable jury verdict against the driver, an unfavorable verdict favoring the Highway Department, Seaton presents trial error contentions of the exclusion of an investigating officer's report, denied re-redirect examination, erroneous standard of care instruction and improper defense counsel final argument relating to the effect of joint and several liability. We examine each of the contentions of error and affirm the jury verdict favoring that defendant.

### I. Issues

Seaton stated as her appellate issues whether:

1. '* * * the notes taken at the accident scene by Deputy Van Alyne, in his capacity as an investigative law enforcement officer for Laramie County, should have been admitted into evidence by the trial court pursuant to Rule 803(8)(C) of the Wyoming Rules of Evidence.

2. * * * the trial court abused its discretion in denying Appellant re-redirect examination of her expert witness to explain computations elicited for the first time on re-cross examination.

3. * * * Instruction No. 9 misstates Wyoming law by conditioning the state's liability for a defective highway condition upon notice to the state of the condition and the risk involved and upon absence of such notice to highway users.

4. * * * defense counsel's comments in closing argument on the effect of joint and several liability substantially prejudiced Appellant's right to a fair trial.

Additionally and almost parenthetically, Seaton also raises what she characterizes as an issue of the sufficiency of the evidence to support the jury's determination that the Highway Department was entirely without fault. That characterization, however, is perhaps misapplied. The thrust of Seaton's argument, rather than sufficiency, seems to address harmless error concepts to be applied if we should determine she is correct regarding any one of her assignments of error.

## II. Facts

At approximately 1:30 a.m. on July 6, 1985, Seaton accepted a ride home from the Cheyenne Club on a borrowed motorcycle driven by an acquaintance, Edward Riekens, Jr. (Riekens). Both she and Riekens had been drinking at the downtown Cheyenne bar since 11:00 that evening. They proceeded to a parking lot a few blocks away where they met some friends and made plans to go to a party south of town. During this time, Seaton developed some concerns regarding the driver's ability to handle the motorcycle.

As the group from the parking lot headed south on South Greeley Highway, approaching the intersection with Interstate 80, Riekens accelerated to nearly sixty miles per hour, moving into the left-hand lane and back into the right-hand lane on a gently curving upgrade. The posted speed limit on that section of highway is forty miles per hour. While maneuvering into the right-hand lane, Riekens glanced over his right shoulder to see where his friends were. Facing forward again, he found himself skidding off the right edge of the travel lane and encountered gravel laying three feet from the gutter beyond the turn lane to the Interstate 80 westbound approach ramp. The motorcycle slid into the curb, became airborne and came to rest against the concrete abutment of the Interstate 80 overpass.

After the vehicle struck the curb, Seaton's extended right leg hit a post, stripping her from the motorcycle and her inertia carried her into a second post. She fractured every major bone in her right leg and both her leg and lower abdomen were seriously wounded. She continues to suffer eighty-five percent impairment of her right leg. Seaton filed suit, naming as defendants the Wyoming State Highway Commission for its failure to correct the dangerous condition created by the accumulation of gravel at the edge of the highway, Riekens and two of his friends who allegedly had been drag racing with him at the time of the accident. Prior to trial, Seaton settled her claims against Riekens' two friends and the matter went to trial to determine the negligence of Riekens and the Highway Department. The jury found 100% against Riekens, 0% against the Highway Department and awarded $390,000 in damages for the serious injuries, extensive medical expenses and permanent disability which resulted. Seaton appeals from the no-fault Highway Department verdict. Riekens did not appeal.

## III. The Van Alyne Notes

■ Deputy Robert Van Alyne of the Laramie County Sheriff's Department was one of the first law enforcement officers to arrive at the scene of the accident. He delivered his investigative notes which identified witnesses and mapped out the location of various items of physical evidence to the chief investigative officer, Wyoming Highway Patrolman Robert Kotzbacher. Included in those handwritten notes was the following controversial entry which, Seaton contends, represents Van Alyne's evaluation of the cause of the accident:

> Initial point of contact with gravel, causing accident: 192′ 10″ No. of So. curbline westbound on Ramp I–80 2′ 9″ E. of W. curbline I–180.

Unfortunately, the parties were precluded from exploring this contention with Van Alyne by his untimely death less than a

month later.[1] Pursuing her theory that Van Alyne's recitation supported the Highway Department's liability, Seaton attempted to introduce the Van Alyne notes during the direct examination of Patrolman Kotzbacher.

In response to the Highway Department's hearsay objection, Seaton pointed to Kotzbacher's testimony that Van Alyne had taken the notes pursuant to his duties as a Deputy Sheriff and that the notes had been incorporated into the Highway Patrol's investigative file on the accident. She asserted those notes were admissible under the "public records" exception to the hearsay rule as set forth in W.R.E. 803(8)(C).[2] The trial court, following argument on the issue, determined the notes contained Van Alyne's opinion on an ultimate question of fact and were properly excluded under this court's holdings in *Harmon v. Town of Afton*, 745 P.2d 889 (Wyo.1987) and *Meyer v. Kendig*, 641 P.2d 1235 (Wyo.1982). Furthermore, the trial court concluded the challenged notes did not conform to the "official record" exception to the hearsay rule despite their incorporation in the records of the Highway Patrol. We agree with the exclusion on the latter basis.

1. Van Alyne lost his life in a Cheyenne, Wyoming flood while attempting to save the lives of stranded motorists.

2. W.R.E. 803(8) provides that the following are not excluded by the hearsay rule, notwithstanding the availability of the declarant at trial: *Public records and reports.*—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

3. This problem is perhaps most clearly described by the following excerpts from 4 D. Louisell & C. Mueller, Federal Evidence § 455 at 730–40 (1980 & Supp.1988) (footnotes omitted), discussing F.R.E. 803(8):
   To use once again the example of an accident report, it seems clear that the report is

There is no doubt that W.R.E. 803(8) permits the admission of certain out-of-court assertions of an investigative officer to prove the truth of the matters asserted. Subsections (B) and (C) of the rule specifically permit the introduction of the first-hand observations and derivative factual findings of a reporting officer. The problem in the present case is the portion of the Highway Patrol's records which Seaton sought to admit was not a declaration of Patrolman Kotzbacher's first-hand knowledge nor did that portion contain the factual findings of his investigation. At most, it contained certain factual assertions by a witness upon which Patrolman Kotzbacher's findings may, or may not, have been based. Such assertions may be admitted solely to establish the fact they were made. They are not admissible to prove the truth of the declarations of that third party because they are out-of-court declarations of someone other than the reporting officer whose records are under consideration. Stated succinctly, those assertions of a witness other than the investigating officer who prepared the report are "hearsay within hearsay."[3]

double hearsay which cannot be within clause (B) insofar as it rests upon interviews by the investigating officer with the participants, and which cannot be used to prove the truth of statements made by the participants. A report within clause (B) can, however, be used to prove that an outsider made a statement, where this fact is itself significant.

The one clear exception to the pattern described above arises where the outsider's statement is itself within a hearsay exception or is "not hearsay" within the meaning of Rule 801(d)(2). Where the outsider's statement amounts to an admission, an excited utterance, a dying declaration, or even qualifies under the business records exception, a public record offered under Rule 803(8)(B) is competent to prove the truth of that statement, assuming that the other requirements of the latter provision are satisfied.

*       *       *       *       *       *

A great advantage of clause (C) is that it embraces records based upon statements or testimony by outsiders to government, so there is no need to show that the source was an official with personal knowledge. Some pre-Rules authority refused to go so far. Like records within clause (A), those within clause (C) should be considered to satisfy foundation

It is clear from the record in the present case that, at the time Seaton sought to introduce the Van Alyne notes, Patrolman Kotzbacher had not as yet given any testimony regarding either the measurements he took at the scene or his opinion regarding the cause of the accident. The contents of the Van Alyne notes could then serve no impeachment purpose. Seaton clearly sought the introduction of those notes solely to prove the truth of what she construed the Van Alyne comments to determine. Within the context of Patrolman Kotzbacher's official report, those notes cannot be said to have set forth either the first-hand knowledge or factual findings of a Highway Patrolman who made his own investigation and filed the official report. Thus, the notes were merely the hearsay of an outsider to the agency whose report was under consideration and were only admissible for Seaton's intended purpose if they could, independent of their inclusion in Patrolman Kotzbacher's report, satisfy a recognized hearsay exception.[4] Seaton failed to lay any foundation to convince the trial court or this court that such might have been the case. We therefore affirm the trial court's decision to exclude the Van Alyne notes.

### IV. The Re–Redirect of Dr. Limpert

Seaton called Dr. Rudolph Limpert as an expert in accident reconstruction to prove the gravel on the highway contributed substantially to the occurrence of the accident. During redirect examination of Dr. Limpert, Seaton's counsel posed a hypothetical question designed to show Riekens could have maintained control over the motorcycle, avoided the curb and negotiated the gentle curve on South Greeley Highway had the gravel not been present. Counsel for Seaton, having elicited an opinion of the speed of the motorcycle just prior to the accident, had Dr. Limpert compute the distance required for one to move the motorcycle three feet to the left, the distance hypothetically required to avoid the accident, both on clear pavement and gravel strewn pavement. Dr. Limpert stated the maneuver could be completed within

---

requirements if properly authenticated as public records, and in effect it is assumed that responsible persons within the agency gathered the information (ultimately from the best sources available), carefully analyzed it and drew "factual" (as opposed to hypothetical or speculative) conclusions from it.

\* \* \* \* \* \*

While clause (C) may properly be invoked in connection with findings which rest upon statements by outsider, probably it remains improper even under clause (C) to introduce those very statements, where the purpose is to establish the matter asserted in them. It may seem a paradox to permit a public report to be introduced as proof of official findings resting upon statements by outsiders, but not to permit the report as proof of the statements themselves, and of what they assert. But the official findings at least reflect the expertise of the agency involved, in effect filtering out those external statements which it finds unbelievable or for some reason inaccurate or unreliable. And where the outsiders' statements would be subject to a hearsay objection if reported in court by the live testimony of a witness, there is no reason to treat such statements differently when embodied in an official report.

Of course the point made about outsiders' statements in connection with clause (B) is true here as well. If such statements fit within their own hearsay exception, the truth of what they assert may properly be proved by a public record offered under clause (C). And a report within clause (C) is competent to prove that such a statement was made.

4. The comment contained in the Van Alyne notes is in itself less than definite. (To the extent of the insufficiency of any proper foundation for introduction, we could agree with the special concurrence.) *See Cornelison v. Aggregate Haulers, Inc.,* 777 S.W.2d 542 (Tex.App. 1989). The accident scene at this point consisted of two wide lanes for south-bound travel with a general curve to the left or the east (where Riekens should have been driving) and a third lane for a vehicle to turn west for access on to Interstate 80 as an upgrade merger intersection for interstate highway connection. The gravel was not located on any regular lane for travel, but was scattered west of the turn lane on a portion of the area of the north/south parking median on the west side of Interstate 80 just before that paved median merged into the lane for travel to enter the Interstate 80 interchange. Not only is the intersection a very familiar connector within the Cheyenne metropolitan area highway system, but also large diagrams and extensive photographs of the scene were provided for jury review, including an aerial photograph taken shortly after the accident.

eighty-two feet on a clear highway, but 234 feet would be required on gravel. Examination went from cross-examination to redirect.

Finally then on recross by the Highway Department, Dr. Limpert admitted those figures represented only the distance needed to complete the avoidance maneuver, without considering the distance which the motorcycle would travel between the initial recognition of danger and the beginning of the maneuver. He estimated that during this "reaction time," the motorcycle would travel an additional 102 feet, thereby requiring a driver to have 184 feet within which to recognize the danger and move three feet to the left on dry pavement. On further examination, Dr. Limpert placed the motorcycle at a point less than 184 feet from the first point of contact with the curb at the point where Riekens claimed to have turned around from glancing over his shoulder and to have first seen the gravel, thereby indicating Riekens could not have avoided the accident even without gravel.

Counsel for Seaton, apparently in front of the jury, requested an opportunity for the third round or re-redirect examination. Seaton's counsel argued a necessity to correct the misleading impression created during cross-examination that Riekens needed to move three feet to avoid the curb. Counsel asserted Riekens would only have been required to miss the curb by six inches to avoid the accident and Seaton should be permitted to have Dr. Limpert compute the distance required to perform that less drastic maneuver. The trial court denied that request. Seaton now attacks that denial as an abuse of the trial court's discretion.[5]

The usual function of redirect examination is to allow a party to explain testimony elicited by an adversary's cross-examination of a witness. *Sanville v. State*, 593 P.2d 1340, 1344 (Wyo.1979). However, we have held the manner in which the examination of witnesses is conducted rests largely within the discretion of the trial court. Before we reverse a verdict on such grounds, the trial court must have flagrantly abused that discretion. *Benham Const. Co. v. Rentz*, 69 Wyo. 176, 238 P.2d 927, 933 (1951). Furthermore, W.R.E. 611(a)[6] requires the trial court to exercise reasonable control over the presentation of evidence to avoid needless consumption of time and to maintain efficiency and order in the proceedings. In conjunction with W.R.E. 403, which permits the court to exclude evidence for reasons of undue delay or waste of time, or because the evidence is cumulative or might confuse the jury, W.R.E. 611(a) vests the trial court with considerable discretion. *McCabe v. R.A. Manning Const. Co., Inc.*, 674 P.2d 699, 712 (Wyo.1983). A trial court does not abuse its discretion with respect to a decision concerning the manner of examining witnesses if that decision was reasonable; that is, if the trial court could reasonably conclude as it did. *Grabill v. State*, 621 P.2d 802, 814 (Wyo.1980).

We discern Dr. Limpert's response to Seaton's original hypothetical, when combined with her comment that somewhat less than a three foot change from the motorcycle's path may have been needed to avoid the accident, was sufficient to apprise the jury of the possible effect of the gravel

---

5. The third round or re-redirect examination is not a normal attribute of Wyoming trials. Reference is made in the reporter to only one case. *MacLaird v. State*, 718 P.2d 41 (Wyo.1986). A national Westlaw search revealed only two other cases where a re-redirect examination was noted. In none of the three cases was it an issue for decision presented by the third inquiry exercise. *See United States v. Sorrentino*, 726 F.2d 876 (1st Cir.1984) (tax evasion case) and *United States v. Cole*, 334 F.Supp. 961 (S.D.N.Y. 1971) (also a tax evasion case). This court said in *MacLaird*, 718 P.2d at 46 that "[b]oth counsel tried to have the last word, and it was difficult for the attorneys to let go of appellant. Defense

counsel pursued what might loosely be called re-redirect examination. The prosecutor did not try re-recross examination."

6. W.R.E. 611(a) provides:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

on Riekens' ability to control the vehicle. Nothing elicited on recross examination can be said to have detracted from or confused the point the litigant was trying to make. Nor were any new issues raised as to which she was denied the opportunity for response. Counsel for the Highway Department merely reiterated a point made during cross-examination that Riekens never had sufficient time to recognize the danger, react to it and avoid it, regardless of the distance needed to complete an avoidance maneuver. A large part of the redirect and recross examinations consisted of efforts to restate testimony Dr. Limpert had given earlier. Neither the trial court nor the jury were required to sit through a third round of the same witness evidence. Even in the second round, redirect examination is discretionary. 3 F. Busch, *Law and Tactics in Jury Trials* § 433 at 930 (1960); 3 F. Lane, *Goldstein Trial Technique* § 12.04 (3rd ed. 1986). The unusual circumstance where re-redirect examination could be justified or even required within the exercise of discretion by the trial court is not presented here. *Martin v. State*, 720 P.2d 894 (Wyo.1986).

### V. Jury Instruction No. 9

■ The trial court refused Seaton's proposed instruction concerning the liability of the Highway Department and, over proper objection, gave the one presented by the Highway Department. The rejected instruction read:

> The accident in this case occurred on a public highway owned and maintained by the State of Wyoming. The State of Wyoming owes a duty to the traveling public to keep its streets and sidewalks in a reasonably safe condition, and is therefore liable for damages for injuries which result from its failure to use reasonable care in keeping them in a reasonably safe condition for public travel.

While the jury instruction given as Instruction No. 9 provided:

> The accident in this case occurred on a public highway owned and maintained by the State of Wyoming. The State has a duty to maintain its highways in a reasonably safe condition, and therefore the State is liable for harm caused to users of the highway, by a condition existing on the highway if, but only if....
>
> (a) the State knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to highway users, and should expect that they will not discover or realize the danger, and
>
> (b) the State fails to exercise reasonable care to make the condition safe, or to warn the users of the highway of the condition and the risk involved, and
>
> (c) the users do not know or have reason to know of the condition and the risk involved.

Seaton objected to Instruction No. 9 on the grounds it impermissibly conditioned the Highway Department's liability on whether the Highway Department knew or had reason to know of the dangerous condition. Seaton contended that, while the requirement of scienter on the State's behalf might appropriately condition its liability as a landowner to its invitees, its duty to maintain the state's highways was greater and could not be so limited. We disagree and hold the duty of the State of Wyoming, with respect to the maintenance of its highways for the safety of those who use them, was conditioned by an element of scienter, identical to that which conditions the liability of a landowner to his invitees.[7]

■ Our analysis of this issue is impeded at the outset, however, by the manner in which the parties to this appeal have raised it. Both parties agree Instruction No. 9 was derived from Restatement (Second) of Torts § 342 (1965), dealing with the duties of a possessor of land. Both parties, however, seem to suffer from the misapprehension that Section 342 speaks of such duties with reference to the possessor's

---

7. The legislature has since applied immunity insulation to road condition claims of the character presented here.

invitees.[8] That is not the case. Section 342 states:

A possessor of land is subject to liability for physical harm caused to *licensees* by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such *licensees,* and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the *licensees* of the condition and the risk involved, and

(c) the *licensees* do not know or have reason to know of the condition and the risk involved.

(Emphasis added.) Compare Restatement (Second) of Torts, *supra,* § 343 (emphasis added), which says:

A possessor of land is subject to liability for physical harm caused to his *invitees* by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such *invitees,* and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Were we to apply the Restatement formulation of the law to the present case, it is clear Section 343 would be the more appropriate of these two sections. Seaton was not "privileged to enter or remain on [the highway] only by virtue of the possessor's consent;" that is, she was not a licensee as the term is defined by Restatement

(Second) of Torts, *supra,* § 330. Rather, she would more appropriately be described as a person "invited to enter or remain on [the highway] as a member of the public for a purpose for which the [highway] is held open to the public;" a public invitee under Restatement (Second) of Torts, *supra,* § 332(2). Thus, Section 343 would more aptly describe the duty owed to Seaton.[9]

Upon examination of subsections (a) of both Sections 342 and 343, we note the language used to describe the scienter necessary to render a landowner liable to licensees differs from that used to frame the respective duties toward invitees. With regard to licensees, the landowner must know or have reason to know of a dangerous condition before liability attaches. As to invitees, the landowner is not liable unless he or she knows of the condition or would have discovered the condition through the exercise of reasonable care. One must wonder, however, whether the distinction between a person having a "reason to know" and a person who would "know through the exercise of reasonable care" is not lost on those who, like the jury in the present case, have not been exposed to commentary in the Restatement which distinguishes that language based on the imposition of an additional duty towards the invitee to conduct a reasonable investigation for dangers. Restatement (Second) of Torts, *supra,* § 342 comment d and § 343 comment b. We suspect such academic niceties could have had no effect on the jury's perception of the correct legal principles to be applied in this case. As we implied earlier, this court has not adopted, and needs not now adopt, the precise formulae for landowner liability offered by the Restatement. Therefore, it does not matter that an instruction on the duty of a

---

**8.** Seaton consistently, at trial and on appeal, referred to Instruction No. 9 as detailing the duty to an invitee. The State, on the other hand, plainly notes in its brief that the instruction and Restatement (Second) of Torts, *supra,* § 342 set out a landowner's duty to a licensee, but then cites presumably supporting authority for the proposition that a state's duty of care with respect to highway maintenance is the same as a landowner's duty to an invitee.

**9.** The variegated history of Wyoming public agency liability for road conditions has been based upon a character of scienter when escaping the immunity defense. *O'Donnell v. City of Casper,* 696 P.2d 1278 (Wyo.1985). *See Opitz v. Town of City of Newcastle,* 35 Wyo. 358, 249 P. 799 (1926), which recognized the city had knowledge that the bridge was out.

landowner to an invitee is presented through language which the authors of the Restatement have deemed to be more appropriate to the landowner's duty to licensees. What is crucial is that the instruction correctly embraced the duty towards an invitee as that duty has been formulated in Wyoming. Furthermore, because Seaton frequently explored without objection the Highway Department's practices concerning the inspection of highways and its concomitant efforts to remove road hazards, we think the jury clearly could have had in mind the broadest possible definition of the Highway Department's "reason to know."

The question remains though whether Instruction No. 9, as we believe the jury would have understood it, correctly states the law in Wyoming. We turn therefore to an examination of the contested scienter requirement as previously expounded by this court in *Buttrey Food Stores Division v. Coulson*, 620 P.2d 549 (Wyo.1980). In that case, we held a landowner had a duty to invitees, the public, to use reasonable care in making the premises reasonably safe to visit. The landowner must protect those individuals as invitees against known dangers and dangers discoverable through the exercise of reasonable care. *Id.* at 552. We also held, however, that the scienter required to render a landowner liable could exist despite lack of actual notice of the dangerous condition and despite the absence of any longstanding danger that might imply constructive notice. This court held such liability could attach where either the landowner's operating methods or other circumstances were such as to create a "reasonable probability" that a dangerous condition would occur. We observed that, since the question of negligence remained with a jury charged with distributing fault based on comparative negligence principles, such a liberal scienter requirement would not serve to make the landowner an insurer of the invitees' safety. *Id.* at 552–53.

We do not think the instructions given in the present case significantly alter the *Buttrey Food Stores Division* formulation. A common sense reading by the jury of the "know or has reason to know" language of Instruction No. 9, without further definitional qualification by the trial court, can be said to embrace not only those situations where the landowner has created the danger or has constructive knowledge of the danger, but to also embrace those situations where circumstances have created a reasonable probability for the occurrence of a dangerous condition. We conclude Instruction No. 9 presented the jury with a correct statement of the scienter necessary to establish the Highway Department's liability. The key to the creation of a duty to the invitee on the premises is foreseeability. *Allen v. Slim Pickens Enterprises*, 777 P.2d 79 (Wyo.1989). The actual instruction given is compatible with the broadly based instruction and standard adopted in Idaho before an immunity change occurred.

In considering the standard of care required of the State Highway Department it is our opinion that the standard should be similar to that owed by a private individual who is the owner or possessor of land to an invitee. We therefore hold that the State Highway Department is subject to liability for harm caused to persons lawfully using the highways for the purposes intended when the State Highway Department creates or maintains a dangerous condition on the highway if the State Highway Department:

(1) knows of or by the exercise of reasonable care would discover such condition, and

(2) should realize that the condition involves an unreasonable risk of harm to those using the highways, and

(3) should expect that persons using the highway will not discover or realize the danger, and

(4) fails to exercise reasonable care to make the condition safe or to adequately warn of the condition and the risk involved, and,

(5) the persons using the highway do not know or have reason to know of the condition and attendant risks.

*Smith v. State*, 93 Idaho 795, 473 P.2d 937, 946 (1970). *See also Johnson v. State*, 636

P.2d 47 (Alaska 1981); *State v. Kallio,* 92 Nev. 665, 557 P.2d 705 (1976); and *State Dept. of Highways and Public Transp. v. Bacon,* 754 S.W.2d 279 (Tex.App.1988). *Cf. State v. Juengel,* 15 Ariz.App. 495, 489 P.2d 869 (1971) and *Phipps v. City of McGill,* 97 Nev. 233, 627 P.2d 401 (1981), which appear to require actual notice.

On appeal, Seaton seeks to take further issue with Instruction No. 9, contending subsection (c) of the instruction, by conditioning the Highway Department's liability on the driving public's lack of knowledge of the dangerous condition, erroneously revives the "obvious danger rule" as a bar to that liability, contrary to Wyoming's adoption of comparative negligence. *See O'Donnell v. City of Casper,* 696 P.2d 1278 (Wyo.1985); *cf. Radosevich v. Board of County Com'rs of County of Sweetwater,* 776 P.2d 747 (Wyo.1989). *See also Allen,* 777 P.2d 79. Our review of the record in this case suggests Riekens' and Seaton's lack of knowledge of the gravel deposits on South Greeley Highway was taken for granted; no evidence or argument appears to have been presented on this issue. We fail to see how it could have had the effect at trial which Seaton proposes. We additionally note that, ignoring the implications contained in questions posed to various witnesses by counsel for Seaton, there was no evidence presented to indicate the gravel had accumulated at the edge of the highway by anything other than natural means. Such being the case, subsection (c) of the instruction was at least arguably a correct statement of the law under our decision in *O'Donnell,* 696 P.2d 1278.[10]

■ We need not determine this issue, however, because Seaton did not state that objection at trial. W.R.C.P. 51 states "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to

consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The purpose of that rule is to apprise the trial court of any objections so it can correct an improper instruction prior to submitting it to the jury. *Alberts v. State,* 642 P.2d 447, 453 (Wyo. 1982). Although an appealing party may claim the submission of a particular instruction was erroneous for a multitude of reasons, in the absence of plain error this court will only consider claims of error relating to those portions of the instruction to which the party offered a proper objection at trial. *Id.; Texas Gulf Sulphur Co. v. Robles,* 511 P.2d 963, 968–69 (Wyo.1973). There was no plain error in this case.

The trial court is afforded considerable latitude to tailor instructions to the particular facts of a case. We will not declare an instruction erroneous if, viewing the instructions as a whole and in the context of the entire trial, we determine it fairly and adequately presents the issues for the jury's consideration. *Clarke v. Vandermeer,* 740 P.2d 921, 926 (Wyo.1987); *Scadden v. State,* 732 P.2d 1036, 1053 (Wyo. 1987). Instruction No. 9 satisfies this test and, accordingly, its submission to the jury is approved.

## VI. Closing Argument

■ In closing argument, counsel for the Highway Department made the following statement:

Mr. Graves explained to you about 50/50 splits in negligence on the verdict form. What he said was correct, but he didn't say enough. If you say in your verdict that Ed Riekens was 99 percent at fault and that the Highway Department was 1 percent at fault, the Highway Department is going to pay the judgment, and the Highway Department

---

**10.** In *O'Donnell,* we held the "obvious danger rule" only served to relieve a landowner of liability where the dangerous condition causing injury to the invitee was created by nature, as would be the case with accumulations of snow or ice. As to non-natural "obvious dangers", we held the landowner would not be relieved of liability except to the extent permitted by the application of comparative negligence principles. In that case, we refused to absolutely absolve the City of Casper from liability under the "obvious danger rule" because it was clear the gravel, allegedly causing O'Donnell's motorcycle accident, had been placed on the highway by the city's road resurfacing operations. *O'Donnell,* 696 P.2d at 1283–84. See also *Jones v. Chevron U.S.A., Inc.,* 718 P.2d 890, 897–98 (Wyo.1986).

will then have an opportunity, if it can, to collect the 99 percent back from Mr. Riekens. I will suggest to you that that's why the Highway Department is in this case at all. Mr. Graves is contending for 1 percent on behalf of his client. That's all he needs. That's all he wants. I have to contend for zero percent for my client, and I need to ask you to put the blame where the blame lies.

Seaton asks us to find that such commentary improperly, if only implicitly, asked the jury to decide questions of fault based on the respective wealth of the defendants and appealed to the jurors interest, as taxpayers, in placing the burden for the total prospective judgment on a party other than the Highway Department.

Counsel's closing argument does not differ substantially from that approved in *Coryell v. Town of Pinedale*, 745 P.2d 883 (Wyo.1987) and *Harmon*, 745 P.2d 889. There, as in the present case, counsel for a governmental entity sought to explain which party was likely to shoulder the monetary burden of a verdict adverse to both that entity and its co-defendant under the court's instruction on joint and several liability. We held that, unless he misstates the law, counsel may properly comment during his closing argument on any instructions given by the court. *Harmon*, 745 P.2d at 893. Seaton suggests no good reason, except those already considered in *Harmon*, why the result in this case should be different. We therefore find no error in permitting the contested commentary.[11]

### VII. Sufficiency of The Evidence

██ The contention which Seaton presented as a sufficiency of the evidence argument appears instead to be an assertion that any error we might find in the trial proceedings could not be deemed harmless. Seaton does not argue the trial evidence, in itself, was insufficient to sup-

port a finding Riekens was the sole negligent party. Rather, she contends, given the particular balance between favorable and unfavorable evidence, such a finding could not have occurred in the absence of any one of the designated errors. Notwithstanding the fact that we have found no errors in the proceedings below, Seaton's claims regarding the balance of evidence in this case simply do not survive even casual scrutiny within our normal rules of appellate review on sufficiency contentions after jury verdict.

> "[W]e assume the evidence in favor of the successful party to be true, leaving out of consideration entirely the evidence in conflict, and assigning every favorable inference to the evidence of the successful party that can be reasonably and fairly drawn from it. In addition, when reviewing a jury verdict, we leave to the jury the duty of ascertaining the facts, reconciling conflicts therein and drawing its own inferences if more than one inference is permissible. Also, when the facts permit the drawing of more than one inference, then it is for the jury to choose which one will be utilized and, if supported by substantial evidence, the jury's choice will be held by us to be conclusive."

*Reese v. Dow Chemical Co.*, 728 P.2d 1118, 1120 (Wyo.1986) (quoting *Crown Cork & Seal Co., Inc. v. Admiral Beverage Corp.*, 638 P.2d 1272, 1274–75 (Wyo.1982)). *See also Brittain v. Booth*, 601 P.2d 532 (Wyo. 1979).

Even if the jury had been convinced the gravel had accumulated at the scene of the accident due to the breach of some duty by Highway Department employees for a sweeping program on median areas, there remained the strong evidence that Riekens alone had caused the accident and the resulting injuries to Seaton. It is clear Riekens had been drinking on the evening of

---

**11.** This writer, except for the force of stare decisis and even then not philosophically, would not willingly recede from his views stated in *Coryell* and *Harmon*. However, the joint and several law which existed in *Coryell*, *Harmon* and also for this accident was repealed and replaced by totally different provisions in 1986

Wyo. Sess. Laws ch. 24, § 1, W.S. 1–1–109 (1977). This challenged argument for any accident that occurred after the effective date of the change of June 11, 1986 would consequently be both legally wrong and procedurally unacceptable.

the accident and exhibited difficulty in operating the borrowed motorcycle. As he approached a gentle curve to the left on South Greeley Highway at nearly sixty miles per hour, he was in the process of negotiating a change from the left hand to the right hand lane of that highway. He turned to look over his right shoulder for his companions. Facing forward again, he found he had crossed both travel lanes of the highway and a sufficient portion of the turn lane for the Interstate 80 entrance ramp to bring him in contact with some gravel off the travel lane for this road system at a point only slightly more than three feet from the curb he eventually struck. It is not unrealistic for the jury to have perceived that Riekens was, during this time, not in control of the motorcycle which he was driving, after drinking, at night and at an excessive speed. The gravel's contribution, if any, to his continued failure to control the vehicle once he had overshot the curve to cross the turn lane and move into the median was to a great extent debateable. Debated it was, and ably so. Seaton lost the debate by jury decision.

The decision of the trial court is affirmed in all respects.

GOLDEN, Justice, specially concurring, in which CARDINE, Chief Justice, joins.

I concur in the result in this case, but disagree with the analysis in Part III, *The Van Alyne Notes*. I believe that Deputy Van Alyne's notes were properly excluded as evidence only because there is a foundation problem with the trustworthiness of the statement offered, and not because the investigative notes of a cooperating law enforcement officer are inadmissible hearsay within hearsay. Treating the investigative notes of all participating officers other than the one who ultimately files the report as hearsay outside an exception unnecessarily excludes evidence "with special trustworthiness * * * by virtue of the declarant's official duty and the probability that the duty has been accurately performed." *Combined Insurance Company of America v. Sinclair*, 584 P.2d 1034,

1046 (Wyo.1978). Investigative notes contributed by a cooperating officer are more accurately characterized as a public report within a public report. In this light they are competent evidence under W.R.E. 805, since both the notes and the report they are incorporated into conform to the W.R.E. 803(8)(C) exception.

Investigative notes, though the product of an outsider, should generally be admissible so long as the foundation requirement of trustworthiness is met. Usually an adequate foundation may be laid with a showing that the notes were prepared by a trained law enforcement officer in the performance of his duties. In this case, however, a trustworthiness problem arises from the structure and content of Deputy Van Alyne's notes.

Deputy Van Alyne provided Patrolman Kotzbacher with a diagram of the accident scene and five pages of notes. The first page lists names, addresses and telephone numbers of two witnesses. The remaining four pages record measurements made by Deputy Van Alyne. The first of these measurements, on the page immediately following the one listing witnesses, states:

Initial point of contact with gravel causing accident: 192'10" No. of So. curbline west bound on ramp I–80 2'9" E. of W. curbline I–80

Because this statement about causation appears just after the witness identification and there are no other comments on causation, it is not possible to establish with any certainty whether the statement is a factual finding by Deputy Van Alyne, or the statement of one of the witnesses he contacted.

Although a factual finding resting in part upon the statements of outsiders is properly admissible under W.R.E. 803(8)(C), an outsider's statement found in a public report is hearsay unless it is itself within an exception and may not be offered for its truth. 4 D. Louisell & C. Mueller, Federal Evidence § 455 at 739 (1977). Because the statement in Deputy Van Alyne's notes may itself be that of an outsider, one of the witnesses, it fails to meet the W.R.E.

803(8)(C) foundation requirement of sufficient trustworthiness that is otherwise normally present in the investigative notes of a law enforcement officer.

It is neither desirable, nor necessary to a sound result, to sweep so much competent evidence aside. Notes of a cooperating officer may address aspects of an investigation not observed or recorded by the reporting officer that will be helpful to the trier of fact. If there is no reason to question their trustworthiness, they should be admissible under the W.R.E. 805 hearsay exception as a public report within a public report. In this case the disputed statement of causation in Deputy Van Alyne's report was properly excluded as lacking in trustworthiness.